| CHARLES WOOD | |
| vs. | |
| CYRUS GAULT AND | JULY TERM, 1850. |
| JOHN B. EMORY. | |

[PARTNERSHIP—LIMITATIONS—STATED ACCOUNT.]

THOUGH a partnership be formed by an agreement under seal, still, a dissolution actually made by the parties, though not under seal, before the period limited by the agreement for the continuance of the partnership, expires,

will, in a court of equity, be held effectual as between the partners themselves, and as to third persons having notice thereof.

It is essentially necessary that the will of the parties, in reference to the dissolution should be clearly expressed, and this is required in respect to all partnerships, whether for a limited period, or at will.

A partnership was formed on the 1st of January, 1838, by an agreement under seal, to continue for three years, from that date. On the 24th of June, 1846, a bill was filed by one of the partners, alleging that the partnership continued until the 1st of January, 1841, and after the expiration thereof, by lapse of time, the defendants, who were the active partners, proceeded to complete divers jobs of work, contracted for and commenced, during its continuance, for which they received large sums of money, and for which among other matters, the bill prayed for an account. There was no proof to show when these sums of money were received, and the defendants, failing to make out, by satisfactory proof, the dissolution of the partnership before the time limited by the agreement, it was HELD—

That as some of these sums of money may have been received within the period of three years before the filing of the bill, and might, therefore, have the effect of taking the whole account out of the statute, the plea of limitations was not a bar to the account prayed for by the bill.

A party who pleads a stated account must show that it was in writing, and likewise the balance in writing, or at least set forth what the balance was, but he need not show that it was signed by the parties, as acquiescence in it without objection, for a length of time, will render it a stated account.

———

[The bill in this case was filed on the 24th of June, 1846, and alleges that a partnership was formed on the 1st of January, 1838, by the following agreement, a copy of which is exhibited with the bill. "*Whereas*, it is this day agreed by and between Charles Wood, Cyrus Gault and John B. Emory, all of the city of Baltimore, to become joint partners in the granite cutting business, which said partners do agree and bind themselves to the following regulations, that is to say :

"*Art*. 1st. The name and style of the said firm shall be known by the name of Emory & Gault.

"*Art*. 2d. The business of said firm shall be extended to the purchasing of all kinds of granite stone, and having the same wrought, selling and delivering the same, setting up granite work, in all its various ways, and the purchasing other kinds of stone suitable for curb or flagging stone, and all work usually done in granite stone yards.

"*Art*. 3d. There shall be kept at all times, by one of the firm,

(or if necessary, by a competent clerk,) suitable books for the benefit of the concern, which books shall, at all times, be open for inspection by any one or more of the partners.

"*Art.* 4. All moneys due the said firm shall be collected, and all moneys owing by said firm, shall be paid by either Gault or Emory, whose duty it shall be to produce vouchers thereof.

"*Art.* 5th. All work done by either of the two last named partners, shall be for the benefit of the whole concern, unless it be by the consent of all the parties.

"*Art.* 6th. Should there at any time appear or come to the knowledge of any one of the firm, any work or other matters connected with said firm, it shall be his duty to make the same known as soon as possible thereafter. It shall also be the duty of either of said firm to make contracts for work in the name of the firm, but when convenient shall consult the other partners.

"*Art.* 7th. The said Emory & Gault shall pay their whole attention to the business of the concern, and have the whole control of the same for the term of this partnership, (unless by disagreement, the third be called, and then a majority shall rule,) and shall receive for their services one dollar and seventy-five cents per day, each, to be paid out of the profits arising in said business, and the remainder to be divided, share and share alike, between all the partners. If in case of a loss, then the parties are to sustain the same in like manner, share and share alike.

"*Art.* 8th. The time and duration of this partnership shall be limited to three years from the date of this instrument. For the faithful peformance of all the within named duties, we have hereunto set our names and affixed our seals this first day of January, eighteen hundred and thirty-eight.

CHARLES WOOD, [*Seal.*]

JNO. B. EMORY, [*Seal.*]

CYRUS GAULT, [*Seal.*]"

After setting out this agreement, the bill proceeds to state and charge, that the complainant, Charles Wood, soon after its execution, removed to the city of Richmond, in the state of Virginia, where he has since resided. That said Emory &

Gault, in pursuance of said agreement, engaged extensively and actively in said business of granite cutting, and continued therein under said agreement until the 1st of January, 1841, and did also after the expiration of said partnership by lapse of time, go on and complete divers jobs of work in said business, contracted for and commenced during the period of the existence of said partnership, and for which they received divers large sums of money. Particular business transactions of the firm are then specified, among others, the furnishing of wrought granite to the government of the United States, for the post office building erected by it, furnishing the granite and doing the granite work for a court house for York county, Pennsylvania, furnishing and setting up granite for the Mayor and City Council of Baltimore, and for various other persons, for which they received large sums of money, amounting to upwards of $200,000, during the term of said partnership, or afterwards, on account of work done or commenced during the period of said partnership, and afterwards finished. That the whole of this sum has been retained by said Emory & Gault, and no part paid over to the complainant, although the sum of $60,000 has been realised, as the clear net profits of the said firm during the existence of said partnership.

The bill then calls upon the defendants for a particular statement of their business and receipts of money, within the period from the first of January, 1838, and the 1st of January, 1841, and also, of all jobs of work commenced within said period, but not completed until after the expiration thereof, and of all sums received therefor, and prays that an account may be taken of all and singular, the sums of money received by said Emory & Gault, on account of said firm, and that such sum as upon such accounting may appear due to him, be decreed to be paid to the complainant, and for further relief.

The answer of Emory & Gault, filed on the 24th of September, 1846, admits the execution of the articles of copartnership mentioned in the bill, and that by virtue thereof, the complainant became a dormant partner in said firm, and so continued until about the 15th of March, 1839, when the partnership was

dissolved, and a complete and final settlement of all the accounts and concerns thereof was made in the manner hereinafter described. The answer then states that the only inducement to defendants for admitting said Wood, (who never advanced any capital stock to said firm,) to become a partner with them, was a private agreement and understanding, that he, said Wood, would cause the firm of Wood & Co., who were engaged quarrying and selling rough granite from the quarries in Baltimore county, and of which firm Wood was a partner, to sell granite stone to the said firm of Emory and Gault, in preference to other stone cutters in Baltimore. That it was expected by all parties, when this copartnership was formed, that Wood would continue a member of the firm of Wood & Co., until the expiration of the term of three years ; but that he so continued only until the 11th of March, 1839, when he sold to defendants, for an ample consideration, all his undivided estate and interest in said firm of Wood & Co. That it was well understood by said Wood, as well as these defendants, that this sale would determine and virtually dissolve the partnership between Wood and defendants, in the firm of Emory & Gault. That immediately after this sale, to wit, on or about the 16th of March, 1839, John B. Emory, one of these defendants, and said Wood, at the request of the latter, undertook the settlement of the said partnership, and examined all the accounts thereof, from its commencement to the 15th of March, 1839, and therefrom a balance sheet or statement (a copy of which is exhibited with the answer) of all the stock and debts and credits and cash of said firm was made out on that day, (16th March, 1839,) in the handwriting of said Emory, in the presence and by the assistance of said Wood. That soon after this balance sheet was made out, Wood removed to Richmond, and being again in Baltimore about the beginning of the month of May, 1839, he then made a final settlement of said partnership accounts, as follows, that is to say, on the 2d of said month of May, 1839, he executed with defendants certain articles of agreement, whereby he assigned to them his interest in the firm of Wood & Co., which he had

38*

sold to them as aforesaid on the 11th of March, preceding. And on the 4th of said month of May, defendants, in order to effect a final settlement with said Wood, agreed to allow and pay him, in addition to the sums they had already advanced him, in full satisfaction of all his interest in said firm, and of all profits which might thereafter arise upon the contract with the commissioners of York county, then unexecuted, and in suspense, the sum of $250. And these defendants accordingly executed and delivered to him, their promissory note for that sum, dated the 4th of May, 1839, and payable in ninety days, to said Wood or order, which he received and accepted in full of his interest in said partnership, including all the profits that might be thereafter realized from said contract with said commissioners, as well as all other contracts and business which they might thereafter transact. That Wood indorsed and passed away the said note, which was paid at its maturity, by the defendants, in some bank in Baltimore. That defendants having full confidence in said Wood, did not require him to sign any release, receipt, or instrument of writing, as evidence of said settlement, nor did they draw up, in writing, or publish any dissolution of said partnership, but aver that said note was given by them and accepted by Wood, as a full consideration for all his interest in said partnership, which was then dissolved and finally settled and closed up. And they rely upon such dissolution as a complete bar to all the relief prayed in the bill.

The answer then denies the amount of receipts for work, &c., as charged in the bill, and avers that the whole amount received by them for all their work, &c., within said term of three years, would not amount to or exceed the sum of $50,000, and that the amount of net profits received within that period, was very little, if any. The statute of limitations is then pleaded and relied upon as a bar to the relief prayed in the bill.

The testimony taken under the commission is sufficiently stated in the opinion.]

THE CHANCELLOR:

The Chancellor is not prepared to say, that in the condition in which this case now stands, the act of limitations is a bar to the relief prayed by the bill.

The parties, it appears, entered into a copartnership by an agreement under seal, dated the 1st of January, 1838, to continue for the space of three years from that date. On the part of the defendants, it is insisted, that the partnership terminated in March, 1839, by mutual agreement. That there was a statement and settlement of accounts at, or about that time, and that for the sum agreed to be paid to the complainant, for his interest in, and as the consideration of his retiring from the concern, the defendants gave him their promissory note, dated the 4th of May, 1839, at ninety days, which they paid at maturity, and which they have produced, and proved under the commission.

The plaintiff, on the other hand, insists, that no such account was stated, and settlement made, but that the partnership endured for the full period stipulated in the agreement, and assuming, for the sake of argument, that the question of limitations is not affected by the fact, that the articles of copartnership are under seal, (a point which I do not mean to decide,) the validity of the defence, appears to me, to depend upon the sufficiency of the evidence of the dissolution and settlement as alleged by the defendants. The answer in this respect is not responsive to the bill, and of course, it is incumbent on the defendants to prove the facts. I incline to the opinion, that though the partnership was formed by an agreement under seal, that still, in a court of equity, a dissolution actually made by the parties, though not under seal, before the period limited, would be held effectual as between themselves, and as to third persons having notice thereof. Such is evidently the opinion of Mr. Justice Story. *Story on Part.*, *section* 268.

But, though this may be the case, it is essentially necessary that the will of the parties, in reference to the dissolution, should be clearly expressed. This is required in respect to all partnerships, whether for a limited period or at will. *Ibid.*, *sec.* 268. Such being the law, the defendants are under an obligation to

show, by satisfactory proofs, that the will of these parties that their connection as partners should be dissolved before the period limited, was clearly expressed.

In my opinion, they have not done so. The evidence of Matthew G. Emory is inexplicit, and believing it all to be true, (and I see no reason to discredit him,) it by no means establishes, with distinctness, a clear agreement to dissolve the partnership. Nor is there any thing in the circumstances and facts offered in the case, necessarily, or perhaps even plausibly, conducing to that conclusion. The balance sheet relied upon by the defendants, so far from showing the plaintiff a creditor of the firm, or entitled to any thing on account of profits, shows the reverse; and yet on the 4th of May, 1839, the defendants gave him their note for $250. It is true, the witness before referred to says, that John B. Emory, one of the defendants, gave up to the complainant, the amount of his indebtedness to the firm, and also said note, as a final settlement, and for the dissolution of the partnership; and that complainant was much pleased, at the manner in which it was settled, and so expressed himself to the witness. It is quite probable that there was a settlement of accounts between the parties at that time, of some sort; and the witness may be under the impression that the debt due from complainant to the firm according to the balance sheet and the note, were given as a final settlement, and for the dissolution of the partnership, but he does not say he heard the complainant say so, and, therefore, giving him credit for veracity, and conceding his memory to be perfect, after a lapse of ten years, (which may admit of a doubt,) and still we are not furnished with that sort of clear evidence of the intention of the partners to dissolve their partnership which the law requires. Certainly, ordinary prudence all round, would have prompted the parties, either to reduce their agreement to writing, or to have more satisfactory evidence of it, than was afforded by the casual presence of a young man in their employment, whose statement of what did take place, is rather inference and deduction than positive assertion.

Assuming, then, that a final settlement of accounts, and dissolution of the partnerships have not been clearly made out, and

it seems to me the plea of limitations is not an answer to the account prayed for by the bill. The bill alleges that the partnership continued until the 1st of January, 1841, and that after the expiration thereof by lapse of time, the defendants who were active partners, proceeded to complete divers jobs of work in said business, contracted for and commenced, during its continuance, for which they received divers large sums of money, of which among. other matter he prays for an account. Now it is impossible to say *when* these sums of money (assuming the statement in the bill to be true) were received. They may have been received within the period of three years of the filing of the bill, and if so, may have the effect of taking the whole account out of the statute of limitations. At all events, I certainly am not prepared now to say, that limitations are a bar. Nor do I think the defendants have made good their defence, founded upon a stated account. A man who pleads a stated account, says *Lord Hardwicke in* 2 *Atk.*, 399, must show it was in writing, and likewise the balance in writing, or at least set forth what the balance was. He need not, to be sure, show that it was signed by the parties, as acquiescence in *it* without objection, for a length of time, will render it a stated account. *Willis* vs. *Jernegan*, 2 *Atk.*, 251. Nothing of the sort is shown in this case, no account stated, signed by, or acquiesced in, by the parties. A balance sheet is shown, but this cannot be made to perform the office of an account stated between the plaintiff and the defendants. This balance sheet, was to show the general condition of the firm, and not the particular state of the account between the plaintiff and his partners. Nor is it pretended that the promissory note was given for any such balance, because, assuming the balance sheet to show correctly .the situation of the affairs of the firm, the plaintiff was a debtor, and not a creditor. If the proof shows any thing in opposition to the title of the complainant to an account, it is not that an account has been stated between the parties, but that there was a compromise, and an assignment of the complainant's interest in the partnership, for a sum certain. Of this, however, I am

not satisfied, and, therefore, shall decree an account with liberty to the parties to take proof in reference thereto.

———

GRAFTON L. DULANEY for Plaintiff.
EDWARD HINKLEY for Defendants.

———

[An appeal has been taken in this case which is still depending.]