Phillips *vs.* Nash.

WILLIAM R. PHILLIPS, plaintiff in error, *vs.* M. B. NASH, defendant in error.

1. Where there is an existing partnership and the members take in a new partner, by a written instrument signed by the old members and the new, which written instrument recites and acknowledges the payment of a certain sum fixed by the incoming partner, and conveys to him one-third interest in the assets, and consents that he shall have a third interest in the profits, the new partnership is complete on the execution of the instrument, notwithstanding it may be agreed that an account of the stock shall be taken, and if it exceeds a certain sum the new partner shall pay one-half of that sum.

2. When there is an existing partnership under a fixed firm name, and a new partner is taken in, and there is no change in the firm name, the new partner is to be considered a dormant partner, unless it appears that his connection with the firm is, by publication or other acts, made known to the public.

3. A dormant partner is liable to everybody dealing with the partnership for its contracts and defeasances whilst he remains a member of the firm, whether those dealing with the firm have knowledge of his connection therewith or not.

4. But a dormant partner is not liable to those dealing with the firm after his withdrawal, even though he give no notice of his withdrawal, except to those who know of his connection with the firm. To such as had such knowledge he is liable, even for contracts made after his withdrawal, unless they have notice of his withdrawal.

5. When, by the partnership articles, one of the partners has a "right of withdrawal within ten days' notice," and he gives the notice the next day after the articles are signed, but no entry is made on the partnership articles of dissolution until some time afterward, when it is entered and signed by the firm name, which firm name does not contain the name of the retiring partner, it is a question of fact for the jury to determine whether the dissolution took place within the ten days, or not until the writing on the back of the partnership articles was made.

6. When goods are consigned to a partnership for sale, and after the consignment and whilst the goods are still on hand, a dormant partner retires, and subsequently the consignor makes a new contract with the head of the old firm, of such a character as amounts to a novation of the consignment, the retiring dormant partner is not liable, even though he gives no notice of his withdrawal, unless it appear that the consignor had knowledge that he was a partner.

Partnership. Dormant partner. Novation. Withdrawal. Notice. Before Judge HOPKINS. Fulton Superior Court. October Term, 1871.

Phillips *vs.* Nash.

M. B. Nash brought complaint against Jefferson L. Richmond, Jane E. Simms and William R. Phillips, partners, under the name and style of J. L. Richmond & Company, for the sum of $310 00, with interest, alleged to be due on an account for the sale of tobacco consigned to said firm.

The defendant, Phillips, pleaded no partnership.

Plaintiff introduced, as a witness, the defendant, J. L. Richmond, who testified, that the account sued on was correct; it was for tobacco consigned to J. L. Richmond & Company, on the 25th day of January, 1870, to be sold by them; that said tobacco remained on consignment until in April, 1870, when the plaintiff authorized witness to manufacture the tobacco or work it up and pay him in manufactured tobacco, at a certain price; this was after plaintiff had been notified that Mrs. Simms had withdrawn from the firm of J. L. Richmond & Company. Witness testified, that W. R. Phillips became a member of the firm of J. L. Richmond & Company on the 20th December, 1869, as the written contract will show, (which written contract being shown him, he stated that it is the one alluded to,) and that said Phillips, as witness understood, remained a member of the firm until the date of an entry upon said written contract, of date, February 10th, 1870; the first notice witness had of Phillips' withdrawal was on the date last mentioned; the firm of J. L. Richmond & Company was composed, originally, of J. L. Richmond and Jane E. Simms, and so remained until Phillips came in, as shown by the instrument referred to before; after Phillips' withdrawal, on February 10th, 1870, the firm remained as before, composed of witness and Jane E. Simms, until in May, 1870, when Mrs. Simms withdrew. Witness was shown a letter from himself to the plaintiff, of date May 10th, 1870; he stated that he had written it, and in connection therewith also said that the plaintiff had, in pursuance of what is stated in said letter, authorized him, Richmond, to manufacture or work up the tobacco sued for in this case and pay him for it in manufactured tobacco, at a certain price; witness proceeded to, and

did manufacture the tobacco, but never paid him, because Phillips prevented the delivery of the manufactured tobacco; all the tobacco on hand at the time of the dissolution between him and Jane E. Simms was turned over, some to Phillips & Flanders, and some to Jane E. Simms, and about $1,000 00 worth sold to Meador & Brother; Phillips & Flanders had made divers advancements to the firm, of cash; the account with Phillips & Flanders was fluctuating; at one time, the firm was indebted to them in the sum of $5,500 00; at another for $1,500 00, for cash advanced. Phillips never looked into the books of the firm, nor was there ever any accounting with him of the losses and profits; when the business finally closed, Phillips took all the stock, etc., on hand, which was worth about $12,000 00, and got this identical tobacco.

Plaintiff then read in evidence the written agreement referred to by witness, Richmond, signed W. R. Phillips, J. L. Richmond and Jane E. Simms, and witnessed by Frank Mills, dated October 20th, 1869, together with the statement on the back of the same, signed by J. L. Richmond & Company, dated February 10th, 1870, of which the following is a copy:

"ATLANTA, GEORGIA, Fulton county.

"Received of W. R. Phillips thirty-five hundred dollars in full for one-third interest in all the machinery and all other articles belonging and appertaining to our manufacturing establishment in the Rock House on Forsyth street, where we are now manufacturing tobacco, which is estimated and valued at thirty-five hundred dollars, and also in full for all the manufactured tobacco in the factory, one hundred and eighty-eight boxes, as well as the balance due on fifty boxes stored at Sharpe, Borroughs & Company, of this city, and also nine hundred and seventy-three dollars worth of leaf tobacco, *en route.*to us, and about five hundred dollars worth in the factory of leaf tobacco, stems, trash, boxes, lumber, etc., and all the movable property belonging to us by reason of said manufactory as well as an account against the hands of said factory for two hundred dollars, which is estimated in the aggregate to be

Phillips *vs.* Nash.

worth seven thousand dollars.  Should it not sum up to the seven thousand dollars as estimated above, or should it run over, then the said W. R. Phillips shall pay in one-half of the amount into the said firm.  The machinery, stock on hand, etc., with this amount of thirty-five hundred dollars, makes a capital of ten thousand dollars.  For this advance the said W. R. Phillips is entitled to one-third of all the profits, and one-third interest in all on hand, with the understanding and agreement that the manufactured tobacco on hand, and all to be manufactured, shall be turned over to Phillips & Flanders, who are to sell at usual commissions known among commission men of this city, and make advances of all taxes on said tobacco at usual rates.  Now, should the said W. R. Phillips, from any cause, wish to withdraw from this trade, he can do so within ten days' notice, and we will pay him this advance back and two per cent. per month for his profits.  Should the said Phillips find it necessary to add more capital, he is to have two per cent. per month for the advance.

  (Signed)      " W. R. PHILLIPS, [L. S.]
           " J. L. RICHMOND, [L. S.]
           " JANE E. SIMMS, [L. S.]

" Signed in presence of, this 20th day of December, 1869.
  (Signed)   " FRANK MILLS."

And the following signed by J. L. Richmond & Company, of date February 10th, 1870, was then introduced, to-wit:

" W. R. Phillips, having given notice that he would not be a partner of the firm of J. L. Richmond & Company, without ever looking into the business, we agree that he is not a partner, but agree to carry out all the other provisions of the contract in giving him control of the assets until his and P. & F.'s advancements and commissions are paid.

  (Signed)     " J. L. RICHMOND & COMPANY.
" February 10th, 1870."

Plaintiff then read in evidence the letter referred to by witness, Richmond, written by him to plaintiff, May 10th, 1870, of which the following is a copy, to-wit:

"Office of J. L. RICHMOND & COMPANY,
"Tobacco Manufacturers,
"Rock-house Factory, Forsyth Street,
"ATLANTA, GA., May 10th, 1870.

"M. B. NASH, ESQ., Louisville, Ky.:

"*Dear Sir*—Yours to hand, giving us a very fair raking, and too, I do not know but what it's just, but as a plea I must state that I have bought Mrs. Jane E. Simms out, and have been very scarce of funds since, and as soon as I can get regularly to running you shall have your money. Hoping this excuse a plausible one, and satisfactory.

"I am yours, etc.,
(Signed)                "J. L. RICHMOND."

Plaintiff closed.

Defendant, William R. Phillips, was then introduced in behalf of himself, and testified that he never was the partner of J. L. Richmond and Jane E. Simms, nor a member of the firm of J. L. Richmond & Company; that the next day after signing the agreement, by which he was to become a member of the firm, he notified J. L. Richmond that he would not be a member; witness sometimes went to the factory of J. L. Richmond & Company, but only to look at the stock on hand, which, by the agreement, he was to control as the security for the money which he had advanced; he never looked into the books of the concern; made no inquiry into the profits or losses, nor did he participate in either; no list or inventory of the property of the firm was ever presented to him nor any valuation of the same made.

Defendant, Phillips, introduced Thomas J. Phillips, who testified that on the next day after signing the agreement of W. R. Phillips, J. L. Richmond and J. E. Simms, on the

Phillips *vs.* Nash.

20th December, 1869, by which they were to become partners, he, witness, heard defendant Phillips tell J. L. Richmond that he would not be a partner of J. L. Richmond & Company; this occurred when a draft came in for $1,600 to be paid for J. L. Richmond & Company; Phillips & Flanders advanced the money to discharge the draft, and were to be paid by consignments of tobacco to be made by J. L. Richmond & Company; defendant Phillips then gave notice to J. L. Richmond that he would not be a partner as contemplated by the agreement signed the day before.

Counsel for defendant, J. E. Simms, introduced Thomas J. Simms, who testified that according to his recollection J. E. Simms withdrew from the firm of J. L. Richmond & Company, in April, 1870; after this, some time, there was a lot of tobacco of the firm which had been turned over to Jane E. Simms as her own, left in the factory, together with another lot belonging to W. R. Phillips, upon all of which the taxes were not paid, and the same was locked up by the revenue officers, who had one lock on the house; Phillips had one lock, and Richmond had a lock.

He gave notice to the plaintiff of his wife's withdrawal from the firm, by letter, and afterwards told him.

Defendant, Simms, introduced Joe L. Wall, who testified that he kept the books of the firm of J. L. Richmond & Company; that the firm was composed of J. L. Richmond and Jane E. Simms at first, but he was informed that they took Phillips in as a partner; that Phillips never looked into the books.

J. L. Richmond, reintroduced, said that he was not present when the said draft of $1,600 00 was presented to Phillips, and never had any notice of Phillip's wish to withdraw until the date of said paper of 10th of February, 1870; that he was broke, but that Phillips got what he had.

The defendant having offered no other testimony, the case was submitted to the jury under the charge of the Court, which was as follows:

"If you should find, from the testimony, that defendant,

Simms, was a partner at the time the consignment was made, and that she withdrew from the firm, and gave notice to the plaintiff of the withdrawal, and after notice was given plaintiff agreed with Richmond, or Richmond & Phillips, that this tobacco should be manufactured, and the whole or a part of it when manufactured delivered to him, and it was manufactured, that would be such a change in the consignment as would discharge Simms from liability. If after notice of her withdrawal plaintiff agreed with Richmond, or Richmond & Phillips, that he would take manufactured tobacco in satisfaction of the debt, and the manufactured tobacco was not delivered, that would not discharge her. Defendant Phillips insists that he was not a partner of the firm of J. L. Richmond & Company. The written agreement that was read to you makes him a partner. By a proper construction of that paper he was a member of that firm. If you should find that after the consignment was made Phillips withdrew from the firm, and gave notice to the plaintiff of the withdrawal, and after the notice was given plaintiff agreed with Richmond, or Richmond and Simms, that this tobacco should be manufactured, and the whole or a part of it when manufactured delivered to him, and it was manufactured, that would be such a change of the consignment as would discharge Phillips from liability. If after notice of his withdrawal plaintiff agreed with Richmond, or Richmond and Simms, that he would take manufactured tobacco in satisfaction of the debt, and the manufactured tobaccco was not delivered, that would not discharge him."

The jury returned a verdict for the plaintiff against the defendants, James L. Richmond and W. R. Phillips, for the sum of $310 00, with interest from May 10th, 1870.

The defendant, Phillips, moved for a new trial, upon the following grounds, to-wit:

1st. Because the Court erred in charging the jury as follows, to-wit: " If you should find, from the testimony, that the defendant, Simms, was a partner at the time the consignment was made, and that she withdrew from the firm, and

Phillips *vs.* Nash.

gave notice to the plaintiff of the withdrawal, and after the notice was given, plaintiff agreed with Richmond, or Richmond and Phillips, that this tobacco should be manufactured, and the whole, or a part of it, when manufactured, delivered to him, and it was manufactured, that would be such a change of the consignment as would discharge Simms from liability."

2d. Because the Court erred in charging the jury as follows: "If, after notice of her withdrawal, plaintiff agreed with Richmond, or Richmond and Phillips, that he would take manufactured tobacco in satisfaction of the debt, and the manufactured tobacco was not delivered, that would not discharge her."

3d. Because the Court erred in charging the jury as follows, to-wit: "Defendant, Phillips, insists that he was not a partner in the firm of J. L. Richmond & Company. The written agreement that was read to you makes him a partner. By a proper construction of that paper, he was a member of the firm."

4th. Because the Court erred in charging the jury as follows, to-wit: "If you should find that, after the consignment was made, defendant, Phillips, withdrew from the firm and gave notice to the plaintiff of the withdrawal, and after the notice was given, plaintiff agreed with Richmond, or Richmond and Simms, that the tobacco should be manufactured, and the whole, or a part of it, when manufactured, delivered to him, and it was manufactured, that would be such a change of the consignment as would discharge Phillips from liability."

5th. Because the Court erred in the following charge to the jury, to-wit: "If, after notice of Phillips' withdrawal, plaintiff agreed with Richmond, or Richmond and Simms, that he would take manufactured tobacco in satisfaction of the debt, and the manufactured tobacco was not delivered, that would not discharge Phillips."

6th. Because the verdict of the jury was contrary to law and equity and the charge of the Court.

7th. Because the verdict of the jury was contrary to the

evidence, and thoroughly and decidedly against the weight of the evidence.

The motion for a new trial was overruled by the Court and the defendant excepted, and assigns said ruling as error.

COLLIER, MYNATT & COLLIER, for plaintiff in error, submitted the following brief:

1st. No evidence in the case on which to base the first paragraph of the Court's charge: Henderson *vs.* Stiles, 14 Ga., 135; Gorham *vs.* Campbell, *Ibid.*, 137. In the same part of the charge, the Court tells the jury that the change in the consignment would discharge Simms, *inferentially*, not Phillips: Gorham *vs.* Campbell, 14 Ga., 137.

2d. The face of the contract shows that the Court erred in its construction; besides, the agreement, alone, would not make them partners: Code, 1880; Collyer on Partnership, numbers 1082–3, 7, 8; Parson's Part., 6. But the Court announced the conclusion of the question in issue by the plea of no partnership. He does not simply tell the jury the meaning of the instrument, but decides the question in issue by the plea. "Construction implies uncertainty:" 2 Par. Con., 500.

3d. The Court erred in charging that it was necessary for Phillips to give notice of his withdrawal: Code, 1870, 1875; Collyer on Part., sec. 536.

4th. The change of consignment from authority to sell to authority to manufacture, releases Phillips, even if he had been a partner: Humfries *vs.* Chastain, 5 Ga., 166; Bonner *vs.* Douglass, adm'r, 25 Ga., 714. But would this ruling release Mrs. Simms, who does not plead no partnership? Code, 1888.

5th. The Court errs in the first paragraph of the charge, by directing the minds of the jury to the question of, whether or not Mrs. Simms was a member of the firm, when there was no plea filed by her, denying the partnership: Wyatt *vs.* Elam, 19 Ga., 335; Family *vs.* Pryor, 15 Ga., 263; Amos *vs.* Amos, 12 Ga., 100.

6th. All agree that Phillips retired on the 10th February.

Phillips *vs.* Nash.

The goods were then on consignment to sell. No trust or confidence had been reposed in him; how, then, could he be expected to answer for the goods? Parson's Part., 415, *et seq.*

7th. The Court, by his charge that Phillips is a partner, withdraws from them the evidence of William Richmond and Thomas Phillips: that Phillips notified Richmond, next day after making the articles, that he would not be a partner.

A. W. Hammond & Son, for defendant, replied as follows: Notice of dissolution necessary: 30 Ga. R., 691; 31st, 403; R. Code, sec. 1885. Court's duty to construe writing: 35 Ga. R., 234; 7th, 494; 29th, 733. The paper made Phillips a partner: R. Code, sec. 1880. He was not a dormant partner: Collyer on P., sec. 4, and cases cited. Mrs. Simms' release avails. Phillips nothing here; the judgment is of no force, as between them.

McCay, Judge.

1. We think it but a fair and reasonable construction of the writing entered into and signed by all the parties in this case, that the contract of partnership was complete on the execution of the instrument. That it was necessary to take an accurate inventory of the stock, and the amount on the books were only matters of detail that were not conditions of the contract taking effect. The words of the instrument pass a present interest to Phillips, and the moment the instrument was fully executed he had a legal title to the interest conveyed. The arrangement for taking stock was only for the purpose of ascertaining the price. The terms of the instrument show a clear *intent* to pass a *present* title to Phillips. This is sufficient to give Phillips a legal interest, even though there be yet something to be done to ascertain the quantity: See Benjamin on Sales, book 1, part 2, chapter 4, and the authorities cited. If Phillips acquired then a legal interest in the stock, it would be a perversion of the intent of the parties to say he did not forthwith become a partner.

2. The name of each ostensible, open partner ordinarily

appears in the designation of the firm—the partnership name as it is called; but one is not necessarily a dormant partner because his name is not included in the partnership name. To constitute a dormant partner it must be intended that ·his name shall not be known to the public. If in any way one holds himself out as a partner, or knowingly permits himself to be so held out, he is liable as an ostensible partner whatever may be the agreement between the partners themselves: Story on Partnership, 980. Collyer on Partnership, book 1, chapter 1, section 1. See also, 3 Kent's Commentaries, 31, 4th edition; United States Bank *vs.* Binney, 5 Mason's Reports, 176, 185. The name of Phillips does not appear in the firm name, and the evidence tends to show that he was not in fact known or intended to be known to the public as a partner.

3. The liability of a dormant partner, to all who deal with a firm during his connection with it, is well settled. He is liable just as though he were an ostensible partner, even though the person dealing with the firm does not know of his connection at the time of the dealing. And this grows out of the fact that he gets the benefit of the dealing, whatever it may be: Winship *vs.* Bank of the United States, 5 Peter's Reports, 529; Etheridge *vs.* Binney, 9 Peck, 272; 1 Douglass, 371; Coop *vs.* Eyn, 1; H. Black 37. And this is so, even if there be a private agreement between the partners to the contrary: Gow on Partnership, 12, 18; Collyer on Partnership, book 1, chapters 1, 11, 27; 4 East, 144.

4. If, however, a dormant partner retire, he ceases to be liable, even though he fail to give notice of his retirement, except, indeed, that he must give notice to those who are aware of his connection with the firm: Story on Partnership, section 159; Collyer on Partnership, book 1, chapter 2, section 2; 2 Kent's Commentary, 68, 4th edition; Newmarch *vs.* Clay, 14 East, 239. And this rule is founded on the principles of justice. Since as a dormant partner is only liable by reason, not of the credit his name gives the firm, but by reason of his receipt of the profits, it follows that when he ceases to receive

any portion of the profits his liability ceases. But if his name be known, then it is presumed that his name gives the firm credit, and to such as have the knowledge he must give notice of his retirement, or he will continue liable: See Story on Partnership, section 80.

5. When this dissolution in fact took place is a question for the jury. There is evidence on both sides, that is, Phillips and his son fix the date the very next day after the signature of the articles, whilst Richmond fixes it at the date of the entry on the articles. We do not think that entry is conclusive. It may or it may not have been made by Phillips' consent. The fact that it is signed by the firm name does not conclude Phillips, for if the partnership had been previously dissolved Richmond would have had no right to sign the firm name.

6. The general rule is well settled that if a creditor of a firm which has been dissolved, by the retirement of a partner, accept the new firm as his debtor, either by taking its obligation for the debt, or by an alteration of the contract with the new firm, the retiring partner is discharged: Story on Part., sec. 156; Collyer on Part., b. 3, chap. 3, sec. 3; Lyth vs. Ault., 11 E. Law and E. Rep., 581. As a matter of course this rule is to be applied with reference to the question of notice, as in other cases, for if the creditor be one having a right to notice, and deal with the new firm without notice of the change of the parties, his acts of novation do not affect his rights, since he supposes he is still dealing with the old firm.

Judgment reversed.