Judge Gbaiiam
delivered the opinion of the Court
Chief Justice Marshall did not adjudicate.
In the year 1839, Thomas Smith, Matthew Kennedy, and Samuel S., and Thomas S. Kennedy, became partners in a wholesale grocery and commission business in Louisville. In the fall of 1844, Thomas S. Kennedy withdrew from the firm, and became a partner in a mercantile firm in New Orleans, to which latter city he immediately removed, and has there continued his residence. In 1845, Samuel S. Kennedy withdrew from the firm, and then for the first time publication was made in a newspaper that the firm was dissolved, and neither of the young Kennedys were partners thereof. The business was afterwards carried on by Smith and M. Kennedy, under the style of Kennedy, Smith & Co., which was the style adopted in 1839, and which had never been altered, although the constituent members of the firm had been materially changed. In April 1845, (being after the withdrawal of Thomas S. Kennedy from the firm,) the plaintiff in this action had his first dealings with the firm by drawing upon them a bill of exchange, which was accepted by Smith in the name of Kennedy, Smith, & Co. This bill was paid at maturity, some eight months after its date. On the 16th of April, 1846, (being after the withdrawal of Samuel S., and after the dissolution of their partnership had been published in the Louisville Daily Journal,) Bohannon drew two bills on Smith, Kennedy, & Co., which were, accepted by Kennedy, Smith, & Co., the acceptance being made by Smith. These last bills not being paid, Bohannon has brought this action upon them, against all of the original partners.
Pleadings.
Instructions of the Circuit Court
One who has bad dealings with a firm is entitled to actual notice of tho withdrawal of any member thereof, otherwisesuchmem her will still remain liable. Wot so with those who have liad no dealings with tho firm, unless the name of the retiring partner appear as one of tho firm.
The defendants Thomas S., and Samuel S. Kennedy, fded their plea of nil debit. The other defendants made no defence. Upon the trial of the issue, a verdict and judgment was rendered for the plaintiff. To this judgment this writ of error is prosecuted by Thomas S,, and Samuel S. Kennedy, who assign for error, the giving and refusing instructions by the Court, on the trial.
At the instance of the plaintiff, the Court instructed the jury, “that if they find from the evidence that the plaintiff had dealings with the firm of K., S.-, & Co., prior to the dissolution of it, they should find find for the plaintiff, unless they find he had actnal notice of the dissolution at the time he took the paper sued on, that the publication of the dissolution in the Daily Journal is not of itself sufficient notice.
“That if they find that prior to the dissolution, the plaintiff had, and endorsed to, and obtained to be endorsed by the Branch of the Bank of Kentucky, a bill of exchange on K., S., & Co., which was accepted by them, he is a dealer entitled to actual notice.”
“That if the jury find from the evidence, that the plaintiff had dealings with the firm of Kennedy, Smith, & Co., composed as alleged in plaintiff’s declaration prior to that dissolution, they should find for the plaintiff, unless they find that he had actual notice of the dissolution at tho time he took the papers sued on.”
As the foregoing contain the substance of other instructions given, it is not necessary to recite the others. It will be seen that in these instructions, no notice whatever is taken of the fact that Thomas S. Kennedy had withdrawn from the firm, before the time when the plaintiff had his first dealing with them. The Court seems to hold him, as to the plaintiff, to be a member until the dissolution of the firm took place as heretofore mentioned. A few of the principles of the law of partnership will enable us to determine the propriety of giving the instructions.
It is a ^general rule that all persons having dealings with a firm, rely on the united credit of all tho members, *120 and when one member withdraws from the firm, and is no longer willing to be responsible for the acts of his co-partners, reason and justice require that the severance of the partnership should be as notorious as the partnership itself was, and if sufficient notice is notgiven, all the members will still be liable for contracts made by their .co-partners; (Cary on Part., 183.) This rule must be considered in connection with these other principles of law. A dormant partner is riot liable for any debts or contracts of the firm, except for those which are contracted during the period that he remains a dormant partner. The reason is, that no credit is in fact, in any such case given to the dormant partner. |If the fact of his a dormant partner be unknown to all the creditors, no notice whatever of his retirement is necessary; if it be known to a few, notice to them is necessary; {Story on Partnership, 257-8.) So where an ostensible partner retires from the firm, he will still remain liable for the contracts of the firm as to all persons who have previously dealt with the firm and have no notice of- his retirement. But as to persons who have had no previous dealings with the firm, and no knowledge who are or have been partners, a different rule may prevail. In such cases unless the ostensible partner suffers his name still to appear as one of the firm so as to mislead the public, (as by its being stated and still remaining in the firm name,) he will not be liable to mere strangers who have no knowledge of the persons who compose the firm, for the future debts and liabilities of the firm, notwithstanding his omission to give public notice of his retirement; for it cannot truly be said in such cases, that any credit is given to the retiring partner by such strangers; (Story on Partnership, 259.) Thus if A, B, C, and D, constitute themselves partners in trade, to be carried on under the style of A & Co., and F has dealings with the company, he of course knows that A is a member of the firm, but he may not know who arc the individuals meant by the name of “Company.” Whilst he gives credit to the *121 •‘Company” as such, he cannot give that credit to any ■particular individual as being one of “the Company,” for the reason that he does not know who he is. If B (one of the unknown members,) withdraw from the ■concern, and F afterwards “has dealings with A & Co., it cannot he said that he parted with his money or property on the supposed liability of B, when he had never known that B had at any time been one of the Company. Hence it is said that a “a partner whose name does not appear in the firm, is only liable for goods furnished during the time he was actually a partner, unless he was known to 'be a partner, in which latter case, notice of dissolution or withdrawal is necessary to shield him from future liability; (Carey 186.)
A dormant partner is liable only whilst he was a ly credited) and no notice - of his withdrawal is necessary: (Story on Part., 237-8.) firem,ber(h.ef was
Kvery.mevnbei at a company is liable to a creditor of the.companyj because he trusts the company tho’ hedoesnothnow its members, but if one withdraw a subsequent ere ditor does no-t credit the person so withdrawing.
Every member of a company is liable to a creditor of a company, because the creditor trusts the company as such, although he does not know who compose it, but if one withdraws from the company, it cannot be said that a subsequent creditor gives credit to a man whom he never knew, and of whom he perhaps never heard. He trusts the company as it is composed when he deals with them, and net as it had 'been theretofore constituted. 'One who had dealings with ihe firm, whilst the after withdrawing partner was known to him to be a member, has a right in subsequent dealings to consider him as still a member until notified of his withdrawal, but it is not so and ought not to be so held as to subsequent dealers who were .ignorant of the persons who had formed the company. But if F knows that certain individuals are now members of a company, although not named as such in the styleof the company, and if B withdraws without giving the world notice thereof, and permits the business !to be carried mn ■under and with the style of the company unchanged, if F in ignorance of B’s withdrawal, has dealings with the company, he has, although a subsequent dealer, a right to assume that B yet continues to be a constituent member of the company, and in such case B would be liable .as partner.
Speed for plaintiffs ; LoughSorough and Ballard for defendants.
To sum up these principles and apply them to the present case, it seems to us that the withdrawing partners are not liable to Bohannon, unless the facts proved, authorized the jury to believe, and the jury did so believe, that he knew that they were once members of the firm, and in ignorance of their withdrawal, dealt with Kennedy, Smith, & Co., under the belief that the. retiring member continued to be of the company; but if on the contrary he once knew that the defendants -/ were of the company, and if he had not information from the newspaper publication or otherwise that they had withdrawn, as in the case of Thomas S. Kennedy, or that the partnership had been dissolved, and if the business was still carried on by M. Kennedy and Smith under the style of Kennedy, Smith, & Co., in such case the defendants would be liable to Bohannon. The instructions given by the Court to the jury, do not inform them of the necessity that Bohannon should have known that Thomas S. Kennedy, or Samuel S. Kennedy, was once a member of the firm, nor do they notice the withdrawal of Thomas S., from the firm, and of course fail to give the law arising upon that withdrawal. The instructions being in conflict with what we hold to be the law of the case, the judgment of the Circuit Court is reversed and the case is remanded with directions to that Court to set aside the verdict and judgment, and grant a new trial to the defendants, and for other and further proceedings not inconsistent with this opinion.