Points decided.

[Filed December 20, 1888.]

## I. R. DAWSON, RESPONDENT, *v.* M. E. POGUE AND CHARLES NICKELL, APPELLANTS.

The acts and declarations of parties to an action are not competent evidence in their behalf, unless they constitute a part of a transaction which bars or disproves the claim made against them, or are a part of a material fact in the case.

In an action against a party, to charge him with a debt as a co-partner, it is competent for him to prove that at the time the debt was contracted the partnership had been dissolved; but, in order' to render the proof admissible, it must tend to show an actual dissolution of the partnership relation.

Where, in an action against one N. and P. for goods sold to the latter, the complaint alleging that they were co-partners at the time, N. denied in his answer, and in his testimony upon the stand, that he and P. were ever partners at any time, and offered in evidence a writing, purporting to have been signed by himself and P. at a time prior to the sale of the goods, to the effect that all partnership that may have existed between them, either express or implied, was that day at an end, which he testified was signed by himself and P. at the time 'it bore date, but which P. denied ever having signed, or having been asked to sign, or that any conversation had ever been had upon the subject; and no evidence was offered showing that the writing was executed as corroborative of or as a part of any transaction between the parties, or in accordance with any mutual understanding between them.

*Held,* that the writing was not admissible as evidence "tending to show that no partnership in fact existed between N. and P. at the time the merchandise was sold, or that any partnership that might have existed between them had been dissolved."

*Held, further,* that the facts and circumstances of the case, together with N.'s testimony, to the effect that, having heard that P. had represented to several parties that he was interested with him, as a partner, to protect himself, he prepared the writing, and had it signed, negatived any inference that it was intended as part of a transaction to dissolve a co-partnership between them, or corroborative of any such transaction.

PER LORD, J., ON RE-HEARING.—Filed November 11, 1889.

Where, on an issue whether a partnership did or did not exist, the record disclosed that one of the defendants, "having heard his co-defendant had reported that he was a partner with him, and to protect himself, prepared a writing" to the effect that all partnership which may have existed between them, express or implied, was at an end, which was signed by them, and offered such writing as evidence tending to show a partnership dissolution;

*Held,* (1)' that the writing was not prepared and executed on the assumption of the existence of any partnership, but as a contradictory statement by the author of such reports; and that it could only be used as evidence to effect the credibility of such co-defendant.

*Held,* (2) that as the writing was prepared to protect the defendant from the declarations of his co-defendant, but that as such declarations could not bind him, or create the relation of partners, the writing could not operate as a dissolution agreement.

*Held,* (3) that, within the purview of the facts for which the writing was prepared, it was not done to dissolve a partnership which was supposed to exist; but, to give it that effect, it would place the defendant in the position of preparing his own and co-defendant's written declarations to serve that purpose, which was inadmissible.

When a bill of exceptions states that the court "instructed the jury upon all the issues involved in the case, and upon matters properly for their consideration," but such instructions were oral, and no part of the same are incorporated therein, and certain instructions asked and refused are set out and excepted to, whether, upon such a

record, the court will presume that the instructions asked and refused, if good law, and applicable to the facts, were covered by the instructions given, not decided; but suggested that the rule as to such presumptions ought to be confined in its operations to the case in which written instructions have been required and given by the trial court, and that then, if a party complains that instructions asked have been erroneously refused, and fails to bring the written instructions given, it is right that such presumption should be indulged.

STRAHAN, J., dissenting.

PARTNERSHIP—HOW FORMED.—A partnership is formed by contract entered into between two or more competent persons.

PARTNERSHIP—DISSOLUTION.—Inasmuch as a partnership is formed by the mutual consent of the parties, it may be dissolved in the same way. Hence, a paper signed by the members of a firm, declaring, in effect, that any partnership that might theretofore have existed between them was at an end, is competent evidence in favor of a retiring partner, as tending to prove that the remaining partner had no power to bind him by contracts for goods, made after the date of such writing.

PARTNERSHIP—EVIDENCE.—A paper, signed by the members of a firm, declaring a dissolution, is competent and material evidence on the issue as to the non-existence of the partnership after that time. If made at the time, it is evidence, of the highest character, tending to prove the fact of dissolution.

PARTNERSHIP—PLEADING.—A person sued as a member of a firm, at a particular time, may deny that he was a member thereof at the time alleged, and prove upon the trial a dissolution of said firm prior to the time charged in the complaint, without alleging affirmatively in his answer the fact of such dissolution. The dissolution is not new matter, constituting a defense, but a fact which may be shown under the denial of plaintiff's allegations.

DORMANT PARTNER—NOTICE OF DISSOLUTION.—Upon the dissolution of a partnership having a dormant partner, such dormant partner need give no notice of his retiring, except to persons who knew of his previous connection with the firm. As to all others, he owes no such duty, and cannot be made liable for debts contracted by the remaining member of the firm after he had retired.

APPEAL from the circuit court for the county of Jackson.

*H. K. Hanna, E. B. Williams, J. R. Neil* and *P. P. Prim,* for Appellant.

*Cox, Smith & Teal* and *H. Kelly,* for Respondents.

THAYER, C. J.—This case, in the circuit court, was an action brought by the said Dawson against said Pogue and Nickell, to recover for merchandise alleged to have been sold to them, as co-partners, under the firm name of M. E. Pogue, by certain merchants doing business at the city of Portland, and the accounts therefor assigned to said Dawson. It was alleged in the complaint that at all times therein mentioned the defendants were partners, under said firm name; that the said merchandise was sold to them, by the several merchants referred to, as such partners; and that the claims therefor were assigned

to .said Dawson.   Pogue made default, but Nickell filed an answer, in which he denied "that he was a partner of the said M. E. Pogue during any of the times stated in the said complaint, or at any other time, under the firm name of M. E. Pogue, or otherwise."   Said Nickell also denied the alleged indebtedness to the several merchants, and denied that the plaintiff, Dawson, was the owner or holder of the said claims, or any portion thereof.   The main issue in the case was in regard to the alleged co-partnership between Pogue and Nickell.   A trial by jury was had, and a verdict returned in favor of the plaintiff; upon which the judgment appealed from was entered.

The appellant's counsel claims that Dawson was not the owner of the accounts sued on, nor entitled to maintain an action therefor; also, that the circuit court committed error in refusing to allow a certain paper, purporting to have been signed by Pogue and Nickell on the twenty-eighth day of February, 1884, to be introduced generally, as evidence in the action; and in giving and in refusing certain charges to the jury.   The only proof of the assign ment of the claims to Dawson seems to have been a stip ulation upon the part of Nickell to the effect that they were assigned to him by the respective parties owning them, by written instruments executed in due form, at the times and places alleged in the complaint, but without any valuable consideration, and for the sole purpose of enabling Dawson to enforce collection of them by action in his own name.   The stipulation was given as a condition for changing the venue of the action from the county of Multnomah to the county of Jackson, and intended to save the necessity of producing the witnesses to the assignment at the trial.   I cannot perceive that it makes any difference whether there was any consideration for the assignment of the claims, or for what purpose they were assigned, if the title to them passed to Dawson.   The execution of a written assignment of the claims to Dawson, presumably, vested the legal title to them in him, and made him the real party in interest.   The transaction, however, may

have been only a sham; but that must be established by the defendants before they can claim that he was not the real party    interest.  The stipulation itself does not prove it.

The ruling in regard to the admissibility of said paper seems to have been made under the following circumstances:   The plaintiff submitted testimony tending ᵗo show the co-partnership between the defendants, as alleged in the complaint.   Thereupon Nickell offered himself as witness in his own behalf, and, after testifying to his having loaned to Pogue $1,500 and taken his note therefor, and a mortgage to secure the same, stated that he and Pogue were never partners at any time; that he heard Pogue was behind; he went to him to get the mortgage and secure the note, that after he had obtained the note, and having heard that Pogue had reported to several parties that he was interested with him, as a partner in the business, to protect himself, he prepared an agreement, bearing date February 28, 1884, which is the paper referred to, and of which the following is a copy:

"JACKSONVILLE, February 28, 1884.

"Know all men by these presents: That, for value received, all partnership that may have existed between the undersigned, either express or implied, is this day at an end.  And it is further understood that neither M. E. Pogue, nor his heirs or assigns, have any claim whatever against Charles Nickell, or his heirs or assigns, on any account.   It is further understood that any claim Charles Nickell has against M. E. Pogue, his heirs or assigns, at this date, is on account of a certain note, given Charles Nickell by M. E. Pogue, for $1,500, and dated January 30, 1884, with whatever interest may have accrued.

"Signed and delivered on the date above mentioned.

"M. E. POGUE,
"CHARLES NICKELL."

Said Nickell further stated that he drew up the document, and that the same was signed by M. E. Pogue and himself, in his office at Jacksonville, in the presence of

XVIII. OR.—7.

each other, on the twenty-eighth day of February, 1884. His counsel thereupon offered said document in evidence, as tending to show that no partnership in fact existed between said Pogue and Nickell at the time the merchandise was sold; that any partnership that might have existed had been dissolved,—and, as evidence tending to impeach the statement made by Pogue, that no dissolution of the partnership testified to by him had been had. The plaintiff's counsel objected to its admission on several grounds. The court sustained the objection, holding that said paper was not admissible under the pleadings; that it was not admissible generally, as to the non-existence of a co-partnership, because it was the act of the defendants, Nickell and Pogue, and could not therefore be introduced in evidence in favor of Nickell; and that it could not be received as evidence tending to impeach Pogue, because no foundation had been laid for its introduction. To this ruling the appellant's counsel excepted. The appellant, by permission of the court, then called his co-defendant, Pogue, as a witness, who testified that the name signed to the paper, purporting to be his, was his signature. Witness was then asked the following question: "Did you not, on the twenty eighth day of February, 1884, sign the paper?" to which he answered: "No, sir; I did not. I never signed such an agreement at any date." In reply to other questions put to him he answered: "I never did sign any such paper at all,— never was asked to sign it;" that he had never had any conversation with Nickell about any such paper; that he could not account for his signature being on the paper, otherwise than that he was in the habit of writing his name on blank pieces of paper, and that it was possible that such piece of paper, upon which he might have written his name, had been found, and the writing inserted above his signature. Nickell, upon being recalled, testified that Pogue signed the paper, in his office in Jacksonville, on February 28, 1884, in his presence. The court thereupon allowed the paper to be read to the jury as evidence tending to impeach Pogue, by showing that he had made statements out of

court contradictory to his evidence in court, but instructed the jury at the time that it was admitted for that purpose only, and should not be considered by them for any other purpose; and subsequently, in its charge to the jury, the court instructed to the same effect; to which counsel for the appellant excepted.

Said counsel also excepted to the refusal of the court to give certain other instructions as requested by them; but they have only brought here detached portions of the charge which the court did give, and it would be unfair to the court to consider those exceptions, without knowing what instructions were given.   It appears from the bill of exceptions that after the evidence had been introduced, and argument of counsel concluded, the court proceeded to instruct the jury upon all the issues involved in the case, and upon matters proper for their consideration; and it is apparent that its instructions covered those asked, and refused by the court, to which reference has been made It is not unusual for counsel to request a trial court to instruct the jury in regard to matters covered by instructions already given.   It seems to me that it is the better rule to require counsel to bring here the instructions which the court did give, or have the bill of exceptions state what instructions were given, if any, in reference to the matter covered by the instructions asked and refused, before they are allowed to complain in consequence of such refusal. Where an ordinary instruction, relating to the matters in issue, is shown to have been requested by counsel and refused by the court, it should be presumed, in the absence of a contrary showing, that the refusal was made upon the ground that it, in substance, had already been given.

The real question to be determined in this case is the admissibility in evidence of the paper referred to   Ordinarily, acts and declarations of parties to an action are not competent evidence in their behalf.   There are exceptions, however, to the rule.   One class of the exceptions is where a transaction is alleged to have been had which, if true, would bar or disprove the claim sued upon.   In such a case

the transaction may be shown by the acts and declarations of the parties, where such acts and declarations constitute the transaction.   That, in fact, is the only way in which it can be shown   Thus, in proving a tender for a debt, payment, an accord and satisfaction, and many other defenses, what the defendant did and said at the time is admissible, as part of the *res gestæ;* but, where the acts and declarations of the party are not a part of the transaction, they are incompetent proof.   In the case at bar it would have been entirely legitimate for Nickell, after the testimony of the plaintiff tending to show his co-partnership with Pogue in the business was submitted, to prove that prior to the time the debts in question were created, the partnership had been dissolved.   Such fact, if established, would have disproved the plaintiff's claim.   But the dissolution of a co-partnership must be proved by evidence showing that the parties mutually agreed to dissolve it, and performed certain acts in accordance therewith.   The dissolution of a co-partnership requires the performance of acts, as much as the formation of one does.   It is not what the parties agree to do which creates or dissolves the relation; but it is what they do in fact.   A co-partnership does not begin until the parties commence to do business under the partnership articles; and it does not terminate until they cease to do business under their agreement of dissolution.   In the former case, they must launch the partnership; in the latter they must stop it, with a view of winding up its affairs.   The paper was offered in evidence as tending to show that no partnership in fact existed between Nickell and Pogue at the time the goods were bought, and that any partnership that might have existed between them had been dissolved; and the question is whether the refusal of the court to admit it for the purpose mentioned was error. The paper was not offered as corroborative evidence that the partnership had been dissolved, nor as part of a transaction between the parties to dissolve it; nor could Nickell, in view of the facts of the case, have consistently offered it as such evidence, or as a part of such transaction, as he

emphatically disclaimed, both in his answer and testimony, the existence of any such partnership at any time. He could not, in the attitude he maintained, claim or pretend that any such dissolution in fact had ever been attempted. He said in his testimony that, "having heard that Pogue had reported to several parties that he was interested with him as a partner, in the business at Gold Hill, to protect himself he prepared an agreement," etc., referring to said paper. This wholly negatives any inference that the paper could possibly have been a part of a transaction to dissolve the co-partnership, or was corroborative of any transaction for such purpose; and Pogue testified that he never signed any such paper at all. never was asked to sign it; and never had had any conversation with Nickell about any such paper.

The case involves these queries: Can a party who apprehends that an attempt may some time be made to charge him with liability as a partner, by merely securing from his supposed co-partner an instrument purporting to be an agreement of dissolution, be able thereby to successfully defend against an action brought to establish such liability? Is such a document admissible as evidence of facts inferable from it, in the face of a denial by the party of their existence, and where it was not prepared or executed for the purpose implied by its terms? Is such a writing a part of a transaction, or corroborative of a transaction, shown positively never to have occurred? Can it be successfully maintained that such a paper. standing alone,.by its own force and vigor, dissolves a co-partnership relation existing between the parties to it? And finally, does an instrument of that character, executed under the circumstances shown, constitute a dissolution of the partnership, or a part of the transaction of its dissolution, or corroborative evidence of its dissolution, or anything more than a declaration of the non-existence of such a partnership?

I cannot understand how there could have been any agreement between Nickell and Pogue to dissolve the partnership found by the jury to exist between them, conceding

that they both signed the paper, as Nickell claimed. The evidence shows conclusively that there was no talk between them about a dissolution, or understanding had in regard to a dissolution. How, then, can it be claimed that a proposition of dissolution was ever made and accepted, or that the minds of the parties ever met in regard to the matter? What more could said paper have been, under the circumstances, than a formal writing, given without any intention of accomplishing any object or purpose beyond that of preventing Pogue from claiming that Nickell was a partner with him in the business at Gold Hill? . I doubt very much whether any case can be found which holds that a writing executed under such circumstances is admissible in proof to establish facts similar to those which this one was offered in support of. If said parties had orally agreed to dissolve their partnership relations, and reduced the agreement to writing, and acted upon it, a dissolution would undoubtedly have been accomplished. But where no such foundation is laid nor such act done in pursuance of the writing, and the evidence clearly shows that none was intended, I do not see how any such result could follow. The actual dissolution of the partnership,—the change of Pogue's and Nickell's relations as such partners,—was the ground of the defense; and unless the paper established that fact it was immaterial.

This case is clearly distinguishable from that of *Emerson* v. *Parsons et al.*, 46 N. Y. 560. There the defendants, who claimed that the partnership had been dissolved, testified to its dissolution, and then offered the following writing in evidence:

"This is to certify that I have purchased the interest of M. H. Parsons and Levi S. Parsons in the firm of E. F. Baker & Co.; and I hereby agree to assume all liabilities of the said firm, and hold M. H. Parsons and Levi S. Parsons harmless.                    E. F. BAKER."

This was objected to by plaintiff, but received by the court, and the ruling excepted to. The judge subsequently charged that this writing was evidence of the dissolution

of the firm, together with the proof of parol dissolution. It is evident that in that case the minds of the parties met in the agreement of dissolution.   The parties had agreed to a dissolution before the writing was executed, and it was so executed and delivered as evidence thereof; and no question was made as to the existence of a co-partnership between the parties prior to that time.   Church, C. J., who delivered the opinion of the court, said: ''The two members of the firm who defend this action testified. in substance, that the partnership was dissolved on the third day of September, and that this paper was then executed and delivered by Baker, as evidence of the dissolution.   *   *   *   I apprehend such a writing, in part fulfillment of the parol contract, would be competent upon the question whether such an agreement was in fact made, as corroborative of the alleged parol contract, and as a part of the transaction.''   Another feature in that case which gives the transaction more the character of a dissolution of a partnership is the disposition of the assets and provision for the payment of the debts.   But the widest difference between the two cases is in the acknowledgment of the existence of the partnership in the one and in the positive denial of it in the other, except so far as logical rules enforce its confession.   In this respect the appellant necessarily occupies an equivocal position.   He cannot consistently maintain his attitude.   He says, in effect, that he was not a partner with Pogue at any time, and that the partnership was dissolved on the twenty-eighth day of February, 1884.   If he had interposed a plea as inconsistent as his attempted proof, it would not have stood a moment; and I do not see that he is any more entitled to prove his case hypothetically than he is to plead it in that manner.   His defense, in that respect, involves as great a degree of absurdity as the old case of the hunter, who aimed to kill the animal, if a deer, and miss it, if a calf.

According to my view of the case, the judgment appealed from should be affirmed.

[ Filed November 11, 1889. ]

LORD, J., on re-hearing —The argument at the re-hearing properly suggests two questions for our determination. These are—First, whether the writing purporting to be a dissolution agreement was properly excluded from the consideration of the jury, except for the purpose stated in the bill of exceptions; and second, whether, when a bill of exceptions states that the court "instructed the jury upon all the issues involved in the case, and upon matters properly for their consideration," but no part of such charge or instructions are incorporated therein, and certain instructions asked and refused are set out and excepted to, the court will presume, upon such a state of the record, that the instructions asked and refused were covered by the instructions given. The facts have already been sufficiently set out in the preceding opinion, and a brief outline of the pleadings, and some of the evidentiary facts, will be all that is necessary to introduce the question involved in our first inquiry. By the complaint, the defendants were charged as co-partners under the firm name of M. E. Pogue, and as liable for certain merchandise sold and delivered to them as such, at the times therein mentioned. Pogue made default, but the defendant Nickell answered, in which he denied that he was a partner during any of the times, as alleged, or at any other time, under the firm name of M. E. Pogue, or otherwise. The object of the pleadings in an action is to arrive at a specific issue upon a given and material point; and here the existence of a partnership, as alleged, was the material point upon which the issue was joined. It constituted the main ground of contention. As outlined by his answer, the theory of the defendant Nickell's defense was that no partnership ever existed between the defendant Pogue and himself; and this theory he maintained and supported in the witness box, swearing "that he and Pogue were never partners at any time." While occupying this position before the court, his counsel undertook to show, by the writing, already sufficiently

adverted to, that the alleged partnership, which the de-fendant had denied and sworn to never have existed. had been dissolved.    This is the effect which they claimed for that writing, and which they insisted the jury was entitled to consider for that purpose, despite the illogical result that it involved of placing the defendant in the awkward and embarrassing attitude of trying to prove that a thing which he had sworn never to have existed, nevertheless did exist, and had been dissolved.    As a partnership must be assumed to exist, at least, before it can be dissolved, the writing, to be operative to prove a dissolution, involved this hypothetical dilemma, and made the evidence for the defense somewhat like the answer in the Vermont prece-dent:    "First, defendant never had the pail; second, if he ever had the pail, he returned it whole; and third, if he did not return it whole it was broken when be borrowed it." It is apprehended, however, that when this dissolution writing, so styled, is examined in the light of the facts and circumstances in which the defendant Nickell testified it originated, it will repel any and every idea that it was taken to dissolve any partnership that existed, or which ever did exist, between the defendants Pogue and Nickell, or that it was taken by him, or was admissible for any other purpose than that for which the court permitted it to be considered by the jury.    This result, if it can be sus-tained by the record, will make the defendant Nickell's testimony consistent with the purpose for which the writ-ing was taken and permitted to be used; but it will make the writing only admissible to affect the credibility of the defendant Pogue, and not as evidence tending to prove a partnership dissolution

Now, turning to the record, it disclosed that the defend-ant Nickell testified that "having heard that Pogue had reported to several parties that he was interested with him, as a partner, in the business at Gold Hill, to protect him-self, he prepared an agreement, exhibit D," etc., which is the writing already set out.    This shows his version of how the paper or writing came to be taken by him, and the

reason he assigned for it. "Thereupon," runs the record, "his counsel offered said paper in evidence, as tending to show that no partnership in fact existed between said Pogue and the defendant at the time the goods, for the price of which this action was brought, were sold by the assignors of the plaintiff, Dawson, and that any partnership that might have existed between them, express or implied, had been dissolved." It is sufficient to say that the court refused to allow the paper to be admitted as evidence, and considered by the jury, for any of the purposes offered, other than as evidence tending to affect the credibility of the defendant Pogue; and counsel insist, in this ruling, that the court committed a "glaring error" upon a "vital point." To show by competent evidence that the alleged partnership did not exist was undoubtedly a point of vital importance to the defendant Nickell, and his own evidence was direct and positive that he and Pogue were never partners at any time; but do the facts, as disclosed by his evidence upon this record, justify the assumption that the paper was taken or executed to dissolve any partnership existing in fact, or in fancy, between them? On the contrary, do not the facts, interpreted in the light of his own testimony, absolutely negative the idea of the existence of any partnership which the paper could operate to dissolve? He says that, having heard that Pogue had reported that he was interested with him, as a partner (that is, without his knowledge or consent, and in his absence, that Pogue had been making declarations to parties that he was a partner), and he says, "to protect himself," he prepared the agreement, exhibit D, etc. That is, to protect himself from the effects of Pogue's declarations, he prepared, and they executed exhibit D. In this view, unless the effect of Pogue's declarations was to bind him as a partner, and thereby create a partnership, the paper, whatsoever may be its phraseology, could not be operative as a dissolution agreement. Its effect, for this purpose, depends upon the legal effect of Pogue's declarations to bind him as a partner, under the facts indicated. On an •

issue of partnership, as here, the principle is elementary
that the declarations of one partner are admissible only to
charge himself, and are incompetent to prove that any
other person is a member of the firm.   "In such cases,"
said Gilchrist, J., "the question is whether the defendants
be jointly liable.   Each one may admit his own liability, as
far as he may choose; but, when the attempt is made to
charge third persons with a debt, upon his mere declara-
tion, the evidence is merely hearsay, and does not come
within any of the exceptions which permit the introduction
of such proof."   *Bank* v. *Moore*, 13 N. H. 101.   So that it
may be said, upon the question whether a partnership
exist, the rule of evidence is well established that the
declarations of one of the alleged partners, made in the
absence of the other, cannot, as against him, be used to
establish the controverted fact of partnership.   *McPherson*
v. *Rathbone*, 7 Wend. 216; *Cowan* v. *Kinny*, 33 Ohio St. 428.
It is evident, then, that the declarations of Pogue could
not be used as evidence to establish a partnership liability
against the defendant Nickell, or to create the relation of
partners between them.   They could not, therefore, have
the effect to bind him as a partner,—much less, to establish
a partnership between Pogue and himself, either in fact or
hypothetically; and, as a consequence, it results that the
paper, or exhibit D, cannot be operative as a dissolution
agreement, within the purview of the facts for which it was
prepared and executed.   To hold otherwise would expand
its legal operation beyond the legitimate effect of the facts
to which it owes its existence, and alien to the purposes for
which those facts authorize it to be used.

In brief, if the defendant Nickell prepared the paper
for the purposes stated, then, as what Pogue had said
could not have the effect to bind him, and create the rela-
tion of partners, it follows that the paper could not be
used as evidence of a dissolution, as that is repugnant to
the reason of the facts, and would have the effect to extend
its protection to objects, and to use it for purposes not
contemplated by the facts, and beyond the reach of any

legal liability growing out of them. In this view, it is clear that the writing was inadmissible as a dissolution agreement.

But again. From the standpoint of the defendant Nickell. the face of the facts show that when he heard of these declarations, and prepared exhibit D he did not suppose, or act upon the assumption, that any partnership existed in fact or otherwise between the defendant Pogue and himself. Now, let it be noted that the disagreement in this case between the defendants does not arise out of any misconstruction as to what is their true relation upon some admitted state of facts, about which there might be a difference of opinion as to whether they were partners or there was a partnership. Cases, no doubt, may occur where, upon a state of facts, the one may think he is a partner, and the other may think otherwise; and, in the end, their true relation can only be determined by the aid of the court. But this was no such case. The writing was not prepared because the defendants differed as to what was their true relation in respect to certain dealings or transactions between them, and executed o segregate, dissolve, and settle their respective interests, and to avoid litigation. There is not the shadow of a pretense that the writing itself was followed, at the time of its execution or afterwards, by any act or acts of dissolution. Not a dollar or thing, not an iota of property, real or personal, was taken or relinquished in pursuance of it. Not a thing was done, or expected to be done, under it; and, so far as its operative force was concerned, as to any uses it served in separating and settling any joint transaction between them, it was as lifeless as a blank sheet of paper. What, then. was the object of the writing. and what was the protection it was intended to afford? To my mind. this is plain for the only legal purpose to which it could be applied upon the facts. It was Pogue's unruly tongue, so to speak, that portended danger; and the object was to bridle it, or to impair its power for injury. As the mere declarations of Pogue that he was his partner were incom-

petent as evidence and could not bind him in an action on an issue of partnership, on the other hand, his testimony that such a relationship did exist was competent, and, if the jury believed him, would bind him.   Now, as the defendant Nickell believed, as he has since sworn, that no partnership existed between them, he sought and obtained from Pogue what would serve as his written declaration of the non-existence of that fact; so that, in case of an action like the present, it might operate as a restraint or bridle on Pogue's tongue, or, if his declaration should take the form of testimony, he could confront him with his written statements to the contrary, which would destroy the value of his testimony, or affect his credibility, and thereby protect himself from injury.   Within the facts, this explains the only legitimate object for which that writing could have been prepared, or the protection it could afford.   It was to confront Pogue, in the event the issue should come as here, with his own written statements, and to condemn him out of his own mouth.   For this purpose the court permitted it to go to the jury; and, in the light of the facts, it has performed the only mission it could have been designed to legally serve.   Despite this, however, it is insisted that the writing was pertinent and relevant to the issue, and ought to have been allowed to go to the jury as evidence tending to show a partnership dissolution; and that the rule of law declared in excluding it was "new and novel," wrong in principle, and dangerous in practice.   This argument amounts to saying that partners may prove in their own favor whatever they may state, orally or in writing, without regard to the circumstances in which such statements originated; or, in other words, that they may prove, each other's declarations disclaiming it, that they were not partners.   All that is necessary when an issue of partnership is involved, no matter what may be the facts, is to formulate each other's statements, verbally or in writing, that they were not partners, —or if a case is made against them, that it has been dissolved; and the court must admit them on the controverted

facts of partnership. It makes no difference whether a partnership existed or not, or what may be their true relation. The declarations of the parties denying, or that it was dissolved, would be pertinent and admissible. Such a rule would be broad enough, if the parties were corrupt enough, to cover any emergency; and its establishment would be a reproach and a menace to the administration of justice. It is in violation of the just principle regulating the admissibility of declarations, and in practical operation would be likely to serve the unjust and punish the just. To admit such testimony, would, as Ryland, J., said, "enable a crafty set of men to carry on an extensive operation as partners, to the world; but when preparation was about to be made, necessary to a failure, then one might withdraw, with all the funds and stock, and honest, confiding creditors be met with the assertion that they never were partners,—that there was no partnership,—and prove it, when sued for their just demands, by declarations made to and about each other during the time they were seemingly engaged as partners. No such declarations should have been received." *Young* v. *Smith*, 25 Mo. 346.

"Parties," says Mr Bates, "cannot prove that they were not partners by proof of each other's declarations disclaiming it. Such declarations, unaccompanied by acts, are no more than the declarations of third parties." Bates' Law of Partnership, § 1143. "They are not entitled to prove in their own favor," said Payne, J., "whatever they or their co-defendants may state." *Carlyle* v. *Plummer*, 11 Wis. 105. "Nor," as Mr. Justice Green said, "give their private conversations or correspondence with one another, or show that they had not held themselves out to the public as partners." *Freeborn* v. *Smith*, 2 Wallace, 101. Judged by his own version, this paper was prepared by the defendant to protect himself against the declarations of Pogue, and not to dissolve any partership he thought or supposed to exist, yet to give this paper the effect claimed it places Nickell in the unenviable attitude of preparing

his own and Pogue's declarations in the form of a writing contradicting or dissolving it, which, in the event of an issue of partnership, as here, he could use as evidence for that purpose.   Self-serving declarations cannot be put in evidence, but what shall we say of such as are prepared? It is incontestable that this paper was not executed in pursuance of any dealings or transactions between the defendants, and, therefore, it could be no part of any transaction, or a part of a transaction, to dissolve a partnership; nor was it, or the declarations, accompanied by any act or acts of dissolution.   In *Phillips* v. *Purington,* 15 Me. 425, it is held on the question whether a partnership did or did not exist, the declarations of the alleged partners, unaccompanied by acts, and unconnected with any of their declarations proved by the other party, are inadmissible in their own favor.   And so all the authorities speak, without a dissentient voice.

The cases cited by my Brother STRAHAN—with due deference I say it—do not touch the point involved in the issue here presented.   It will be enough to advert to the principal ones relied upon, to illustrate my meaning.   In *Emerson* v *Parsons,* 46 N. Y. 560, the partnership was admitted, and the parties had testified to the fact of its dissolution, and then offered in evidence the writing of dissolution which was executed in pursuance of it, which was admitted.   As Church, C. J., said:   "It was a part of the transaction which was claimed to be a dissolution of the partnership."   In *Cregler* v. *Durham,* 9 Ind. 375, a partnership had existed, and had been dissolved; and it was sought to hold one of the defendants upon a subsequently created liability.   As tending to prove the fact of a dissolution of the partnership, the statements of members of the firm jointly made to third persons of the fact, were admitted and excepted to, the court saying that "their declarations and acts touching the subject are continuous *res gestœ.*"   In these cases the writing and declarations were a part of a transaction.   A partnership which had existed had been dissolved, and these were a part of the facts surrounding

its dissolution and necessarily a part of the *res gestæ*. Now, if there was a partnership, and it had been dissolved, these facts being admissible in evidence, the acts and declarations accompanying them likewise are,—are a part of the *res gestæ*. But if there was no partnership, as is claimed there could be no such transaction as a dissolution of it, and a paper prepared and executed to dissolve that which did not exist could be no part of the *res gestæ*. There is no main act or transaction which such declarations or paper can accompany, and be a part of it; and, consequently, they are not admissible on that ground. And herein lies the difference between these cases and the case in hand. That such a paper, prepared and executed under such circumstances, should be used as evidence for the purpose claimed, cannot be sustained. It is subversive of the soundest principles of the law regulating the rules of evidence. On the other hand, to admit it for the reason allowed by the court, it serves the only legal purpose for which it could have been taken; is consistent with defendants' statement of the reasons for which it was prepared and executed; and is, likewise, consistent with the testimony and verified answer. There was no error.

The next question is whether, when a bill of exceptions states that "the court instructed the jury upon all the issues involved in the case, and upon matters properly for their consideration," but no part of such charge or instructions are incorporated therein, and certain instructions asked and refused are set out and excepted to, this court must presume, upon such a state of the record, that the instructions asked and refused were covered by the instructions given. The question arises out of the opinion of the chief justice, *supra*, in which he said: "It is the better rule to require counsel to bring here the instructions which the court did give, or have the bill of exceptions state what instructions were given, if any, in reference to the matter covered by the instructions asked and refused, before they are allowed to complain in consequence of such refusal. Where an ordinary instruction relating to

the matters in issue is shown to have been requested by counsel and refused by the court, it should be presumed, in the absence of a contrary showing, that the refusal was made upon the ground that it, in substance, had already been given." Upon this ground the majority of the court refused to consider the instructions asked for, and refused by the court below; and this is claimed to be a "new rule of practice," which, if adhered to, will prove to be vexatious and cumbersome; and therefore a reconsideration of the opinion, in this particular, is demanded alike by a well-regulated practice and the defendant injured by it. Mr. Thompson lays it down as elementary law that "it is not error for the judge to refuse requests for instructions upon propositions which have elsewhere been sufficiently covered, either in his general charge or in other special instructions given; and it is a principle, upon which appellate courts uniformly act, that the judgment will not be reversed for the refusal of instructions, if the court can see that the case was placed fully, fairly, and properly before the jury by the instructions which were given, although the requests refused may have been correctly drawn in point of law, and in their application to the evidence,"—and cites numerous authorities in support of the principle.   2 Thomp. Trials, § 2352, and note 3.

Among the various reasons assigned for the rule, one is: "That courts will presume jurors to be men of average intelligence, and capable of understanding and bearing in mind a proposition of law once fully and clearly stated, without its repetition in subsequent instructions;" and it is also laid down that the repetition of instruction on particular points is a censurable practice, as it may tend to give undue prominence to particular features of the evidence. Id., and notes. It must then be regarded as settled law that, if the instructions asked are covered by the instructions given by the trial court, such court may refuse to instruct further, and such refusal is not error. Now, the record discloses affirmatively that the court "instructed the jury upon all the issues involved in the case, and mat-

XVIII. OR.—8.

ters properly for their consideration," which must include the instructions asked and refused, or their substance,— assuming that such instructions were correct in law and applicable to the facts; and, under the elementary and familiar rule that error is never presumed, must we not presume that the instructions given covered the instructions asked and refused, unless the appellant made the instructions, or, at least, so much of them as may be necessary, a part of the bill of exceptions, and thereby show the fact to be otherwise, and thus rebut such presumption in favor of the trial court? It has been repeatedly held by this court that error will not be presumed, and that the party alleging its existence must make it affirmatively appear, and with a reasonable degree of certainty. Said STRAHAN, J.: "It does not appear from the record what instructions the court gave the jury. In such case, it cannot be assumed that the court instructed erroneously. On the contrary, the legal intendment is that proper instructions were given. To hold otherwise would be to presume error, which is never done. He who alleges error must make it appear affirmatively from the record." *Coffin* v *Taylor*, 16 Or. 375; *Thompson* v. *Coffman*, 15 Or. 631.

This theory of the law, that all presumptions are in favor of the correctness of the action of the trial court in its rulings or decisions, necessarily makes it the duty of him who claims its actions in the premises to be erroneous to save and preserve in a bill of exceptions such alleged erroneous rulings and decisions in such form as will exclude the influence and operation of such presumptions. As the appellate court must act on the presumption—especially on a record like this—that the instructions given by a trial court fairly and correctly stated the law applicable to the facts, and as this presumption would inevitably include or cover the substance, at least, of the instructions asked which were correct in point of law, and applicable to the facts, and would justify their refusal on the ground of repetition, the defendant, to show error and exclude the effect of such presumption, would necessarily

be compelled to include in the bill of exceptions the instructions given, or so much of them as was necessary for that purpose, so as to show affirmatively to the appellate court that they did not cover the instructions refused. The case stands, then, in this wise: The appellant claims that the instructions asked are good law, and applicable to the facts, and, therefore, that it was error to refuse to give them to the jury; but to this it may be answered that the record shows that the court did instruct the jury upon all the issues involved, and that in such case the presumption of law is that the jury was properly instructed upon the law applicable to the facts. And this being so, it follows that your instructions have been covered by these already given, unless you can show by the instructions given, and those asked and refused, that such is not the fact. How can this be done, and the appellate court perform its office, unless the bill of exceptions contains the instructions given? How, on the basis of this presumption, and the duty of the appellant to show error, can the appellate court know with certainty that the trial court erred in refusing the instructions asked, when he has failed to furnish the *data* which would show the alleged error, viz., the instructions given? In *Moody* v. *Railroad Co.*, 41 Iowa, 284, the court say: "It is urged that the court erroneously refused certain instructions which are set out in the abstract. Should we concede that these instructions are correct, we cannot reverse the judgment for their refusal, upon the facts made to appear by the abstract before us. It is shown that the court instructed the jury; but the instructions given are not set out. We must, in the absence of error being made to appear affirmatively, presume in favor of the correctness of the court's rulings upon all questions. We will presume that the jury were correctly instructed, and, if any instructions were refused which announce correct rules of law, the refusal was on the ground that the instructions given presented the same doctrines." In *Kennedy* v. *Anderson*, 98 Ind. 152, the record shows that certain instructions were asked by the defend-

ant and refused, etc., and the court say: "The presumption is that the court instructed the jury fully upon the law as applicable to the facts in the case; and, unless we had before us all the instructions given, we cannot say but these instructions were refused for the reason that the court had substantially given the same in its own instructions." In *Myers* v. *Murphy*, 60 Ind. 287, the same court thus stated the doctrine: "All the presumptions are in favor of the correctness of the decisions of the court below; and, where a party claims in this court that any of those decisions are erroneous, he must so save and present the alleged erroneous decision, in the record, as to exclude every reasonable presumption in favor of such decision. In this case, as the appellant failed to make the instructions of the court below to the jury a part of the record, it is impossible for us to know with any certainty whether or not the court erred in its refusal to give the jury the instructions asked for by the appellant; and therefore we are bound to presume that the court did not err in such refusal. In *Commissioners* v. *Roberts*, 22 Kan. 762, it is held that the court will not ordinarily reverse the judgment of the trial court for alleged errors in giving and refusing instructions, when all the instructions given in the case are not embraced in the record. So, also, in *Hahn* v. *Insurance Co.*, 50 Ill. 526, it is held that a judgment will not be reversed merely because an instruction, though proper in itself, was refused, when it appears from the bill of exceptions that instructions were given which are not embodied in the record. And finally, in *Elliott* v. *Rosenberg*, 17 Mo. App. 668, the court say: "The defendant asked the court to give certain instructions, which the court refused to give. We are not at liberty to review the action of the court in refusing these instructions, because the record further shows that the court of its own motion gave certain instructions, and the instructions thus given by the court are not preserved in the record. As every reasonable intendment must be made against the appellant, and in favor of the validity of the action of the court, we are

legally bound to assume that the instructions given by the court of its own motion were not only proper declarations of law, applicable to the facts, but, further, that they may have covered the grounds properly embraced in the instructions asked by the defendant." *Greenbaum* v. *Millsaps*, 77 Mo. 474; *Connolly* v. *Davidson*, 15 Minn. 520 (Gil. 428); *Aldrich* v. *Palmer*, 24 Cal. 513; *Killips* v. *Insurance Co.*, 28 Wis. 472; *Wolfe* v. *Tyler*, 1 Heisk. 313; *Insurance Co.* v. *Sturges*, 12 Heisk. 339; *Brown* v. *Forest*, 1 Wash. T. 201. In several of these States the court is required to charge the jury in writing, at the request of a party as in our State; and in some others the charge must be in writing. It would seem that the reason of the rule grows out of the fact that, as counsel draw their own instructions, and can require the instructions of the trial court to the jury to be in writing, and thus afford the appellate court an opportunity to consider all the instructions,—those given and those asked,—and to determine, upon the whole, whether the law has been fairly and correctly presented to the jury, it is but reasonable to require the parties who ask instructions which are claimed to be good law, and applicable to the case, to bring the instructions given. Otherwise, the appellate court will presume that the trial court has discharged its duties, and properly instructed the jury upon all the material facts. But, I must confess, I am not favorably impressed with so broad an application of the rule. Under a statute like our own, where the charge may be, and usually is, orally given, unless a party exercise his right, and require the trial court to put it in writing, it seems to me that such presumption ought not to prevail, but that it ought to be confined in its operation to the case in which written instructions have been required and given by the trial court; and then, if a party complains that instructions asked have been erroneously refused, and fails to bring the written instructions given, it is right enough that such presumption should be indulged. In this view, where the instructions given are oral, like the case at bar, the duty of the appellate court would simply be to deter-

mine whether the trial court ought to have given the instructions asked and refused, or either of them. In doing this, the appellate court is not to presume, because the instructions asked were refused, that no instructions on the point were given, or that those given were neces-sarily erroneous; but, if the instructions asked and refused contained a correct exposition of the law applicable to the facts, and which ought to govern and control the case, it ought to sustain the exception to their refusal, and reverse the case. This would necessarily require the appellate court to examine the instructions, to ascertain whether the trial court was bound to give them; and for this reason I shall refrain from deciding the question, and pass to an examination of the instructions asked and refused, with the remark that the object of the extended notice given to this subject has been to attract attention to it. The instructions deemed necessary to pass upon are fully set out in the dis-senting opinion of Mr. Justice STRAHAN, and by reference to them the application of what follows may be observed. It will be noticed that in some form or other they are all based on the idea that there was some evidence of partner-ship dissolution prior to the purchase of the goods for which the action is brought. The record discloses there is not a *scintilla* of evidence on this point, except what is claimed as the effect of exhibit D; and, as we have already shown, in view of what that writing was taken for, that it cannot operate as evidence of a partnership dissolution, it follows that the instructions asked and refused were not based on evidence in the case, and were properly refused.

The judgment must be affirmed.

STRAHAN, J., dissenting.—The plaintiff brought this action against one M. E. Pogue and Charles Nickell in the circuit court of Multnomah county, to recover for goods, wares and merchandise alleged to have been sold by plain-tiff's assignors to the defendants, as partners doing busi-ness under the firm name of M. E. Pogue. The venue was changed to Jackson county, on the ground of the conve-nience of witnesses. Pogue made default, but Nickell filed

an answer denying every material allegation of the com-
plaint.  A trial before a jury resulted in a verdict and
judgment in favor of the plaintiff against the defendant
Nickell, from which he has appealed to this court.   The
principal question litigated upon the trial was whether or
not a partnership existed between Pogue and Nickell at
the time the goods mentioned in complaint were sold.    In
other words, whether the said goods were sold to M. E.
Pogue, or to M. E. Pogue and Charles Nickell, as partners.
The questions requiring our attention on this appeal are
those arising on the rulings of the court below in the
admission and exclusion of evidence, and the giving and
refusing of instructions.   The appellant denied that any
partnership ever existed between himself and Pogue.   On
the contrary, Pogue testified that such partnership existed
at the time of the sale of the goods, and that Nickell was
a dormant partner.   The defendant Nickell testified that
such partnership was never entered into; that it was talked
of between himself and Pogue, and that he prepared
duplicate articles of agreement with a view of forming
such a partnership, but that the same were never executed;
that he advanced to Pogue $1,500, for which Pogue gave
him a note and chattel mortgage.   The defendant Nickell
also testified, in substance, that after he obtained Pogue's
note, bearing date January 30, 1884, and having heard that
Pogue had reported to several parties that he (Nickell) was
interested with Pogue as a partner in the business at Gold
Hill, to protect himself, he prepared an agreement dated
February 28, 1884.   Said paper was produced and called
"exhibit D," and after the witness identified the same and
testified that it was executed by Pogue and himself, in his
office at Jacksonville, on the day it bears date, the same
was offered in evidence, and is as follows:

"EXHIBIT D.

"JACKSONVILLE, February 28, 1884.
"Know all men by these presents : That, for value re-
ceived, all partnership that *may* have existed between the

undersigned, either express or implied, is this day at an end. And it is further understood that neither M. E. Pogue, nor his heirs or assigns, have any claim whatever against Charles Nickell, or his heirs or assigns, on any account. It is also further understood that the only claim Charles Nickell has against M. E. Pogue, his heirs or assigns, at this date, is on account of a certain note given Charles Nickell by M. E. Pogue for $1,500, and dated January 30, 1884, with whatever interest may have accrued. Signed and delivered on the date above mentioned.

"M. E. Pogue,

"Charles Nickell."

The appellant then offered this writing in evidence, as tending to show that no partnership in fact existed between said Pogue and appellant at the times the goods mentioned in complaint were alleged to have been sold, and that any partnership that might have existed between them before that time, either express or implied, had been dissolved by said writing. The respondent objected to the introduction of this writing in evidence because it was in the nature of impeaching evidence,—it tended to impeach Pogue; and that no proper foundation had been laid for its introduction; and that it was not competent on the question of the dissolution of the partnership for the reason no foundation was laid in the pleadings for its introduction; and, further, it was incompetent for the purpose of proving that no partnership existed, and said document was immaterial. The court excluded the paper from the jury, and this is the first assignment of error demanding our attention.

1. A partnership is formed by contract between two or more competent persons. *Kelly* v. *Bourne*, 15 Or. 476. Its terms and purposes, as well as its duration, are all conventional and are within the power of the parties. As the partnership is formed by mutual consent of the parties, it may be dissolved in the same way. 1 Collyer on Part. § 105, Story on Part. §§ 267*a*, 268; Parsons on Part. *384. If this paper was executed as it purports to have been, its legal effect was to dissolve whatever relations of partnership

may have existed between the defendants at the time.    It expresses the will of the parties that any partnership relations that might theretofore have existed between them were at an end, and that is all that was necessary to accomplish that result as between themselves.    I think, therefore, that it ought to have been admitted in evidence when offered by the appellant.    If it is what it purports to be,— and of that the jury was to judge as a matter of fact,—it was material and competent evidence, on the issue, as to the non-existence of the partnership, and the court erred in excluding it.    *Emerson* v. *Parsons,* 46 N. Y. 560; *Cregler* v. *Durham,* 9 Ind. 375; *Skinner* v. *Tinker,* 34. Barb. 333; *Pine* v. *Ormsbee,* 2 Abbott's Pr. (N. S.) 375; *Carlton* v. *Cummins,* 51 Ind. 478; *Wood* v. *Gault,* 2 Md. Ch. 433; *Gardiner* v. *Bataille,* 5 La. Ann. 597; *Bank* v. *Page,* 98 Ill. 109; *Boyd* v. *McCann,* 10 Md. 118.    In *Boyd* v. *McCann, supra,* it is held, in effect, that a notice of the dissolution of a partnership, published in a newspaper, though not *per se* sufficient to show either that the dissolution took place on a certain day prior to the publication, or that the parties dealing with the firm and others had notice of the dissolution on that day, is yet admissible in evidence as a circumstance tending to show these facts.    So, in *Bank* v. *Page, supra,* it is held that where a partnership is entered into for one year, it may be terminated, by mutual consent, at any time the parties may choose.    And in *Gardiner* v. *Bataille, supra,* it was held that, if a partnership could be established by parol, it was not easily to be perceived why it could not be avoided in the same manner.    Such evidence no more contradicts the act than proof of payment by a witness contradicts a promissory note.    So, in *Carlton* v. *Cummins, supra,* it was held that where no definite time for the continuance of a partnership had been agreed upon, it may be dissolved at any time, at the option of any member of the firm.    And in *Pine* v. *Ormsbee, supra,* it was held that a partnership for no definite period is dissolvable by either party, by mere notice; and such notice may be implied.    In *Skinner* v. *Tinker, supra,* it was decided that,

where the partnership has no limit in respect to time, it may be dissolved by either partner, at any time. And in *Cregler* v. *Durham, supra*, it was said: "As tending to prove the fact of a dissolution of the partnership, the statements of the members of the firm, jointly made to third persons, of the fact, were admitted. This is objected to, because the statements were not made in the presence of the plaintiff. Partnerships formed by parol may be dissolved by parol agreement. When so dissolved, how may the fact of dissolution be proved? There being no written evidence of it, we do not see how it can be shown, except by the declarations and acts of the parties. Had the parties published a notice in an Indianapolis newspaper of the fact of such dissolution, we suppose it might have been given in evidence, though the plaintiff had never seen it. Yet such a publication would have been but the parol declaration of the parties themselves. If such a publicainto would have been admissible evidence, why should not their joint declaration orally made to the public also be admissible? This plaintiff then stood in no relation to the firm requiring notice. We do not say either of the above items of evidence would be sufficient. It certainly would not be conclusive, but would be admissible as tending to prove the fact. Their declarations and acts touching the subject are continuous *res gestœ*." It was, in effect, insisted upon the argument that Nickell had precluded himself from proving a dissolution of the alleged partnership, because he had denied its existence in his answer. If there never had been any partnership between Nickell and Pogue, then Nickell never became liable for the goods purchased by Pogue. If the partnership once had an exist ence, but was dissolved, by the mutual agreement of Pogue and Nickell, before the goods were purchased, and Nickell was unknown to the plaintiff's assignors as a partner, then he would not be liable for the purchase price of said goods. It is not, therefore, perceived upon what legal principle this objection can rest. Nickell was unknown to the plaintiff's assignors at the time the goods were sold. They did

not rely upon his credit. He did not in any manner deceive or mislead them. Why, then, should he be precluded from proving that, if such alleged partnership ever existed, it had been terminated before the goods were purchased? It was argued that, logically, a partnership that never had any existence could not be dissolved. True; but it is sometimes difficult to determine, upon admitted facts, whether the relations of partners existed or not. When Nickell learned that Pogue had reported that he was a partner, I think he had the right, for his own protection, to enter into an agreement with Pogue dissolving such alleged partnership. If such partnership did exist, said agreement would discharge Nickell from its duties and responsibilities. If it never existed, the agreement could injure no one. Most of all, it could not injure the plaintiff's assignors, who did not hear of said alleged partnership, so far as appears from this record, until long after the sale of the goods. No authority was cited by respondent's attorney to support his contention on this point, and I have been unable to find any. On principle, and aside from authority, I am satisfied the rule is the other way. As a mere question of pleading, a defendant is required by the Code, after making such denials as his case will justify, to allege new matter constituting a defense, but not matter which merely controverts, or is inconsistent with, the right set up by the plaintiff. The issue as to the existence of the partnership was already made by the denials in the answer. The defendant would not have been permitted to allege a dissolution, for the reason that such allegation would have been clearly redundant. On the issue as formed, it was proper to introduce all competent evidence which either party desired, tending to prove or disprove the existence of the partnership at the time of the alleged sale.

2.    The court, in excluding said exhibit D, said, ''that it was not admissible generally as to the existence of a co-partnership, because it was the act of the defendants Nickell and Pogue, and could not therefore be introduced in evidence in favor of Nickell.'' This ruling seems some-

what obscure, but however meant by the learned circuit judge as applied to the document in question, it was erroneous and misleading. It was offered to disprove, or as tending to disprove, the existence of a partnership between Nickell and Pogue at a particular time, and it was competent evidence for that purpose. It was original evidence on the very fact in controversy. It was the act of the defendants, but it was not for that reason incompetent. The partnership, if it ever existed, was formed by the agreement of these parties. It could have been formed in no other way. Why they could not dissolve it, and why the agreement of dissolution may not be shown, when proof of the fact became material, has not been in any manner explained to us.

3. The court refused the following instructions asked by the appellant Nickell, to which refusals, in each instance, an exception was taken. "(1) That a general partnership may be dissolved by the mutual agreement of the parties; and, if you find that M. E. Pogue and Charles Nickell did, on the twenty-eighth day of February, 1884, mutually agree that any partnership existing between them should cease, and no longer exist, then, and in that event, all partnership at that time existing between them was dissolved, and they were no longer partners. (2) If you find from the evidence that M E. Pogue and Charles Nickell were not partners from and after February 28, 1884, the plaintiff cannot recover against Nickell in these actions unless you further find that some or all of those parties with whom Pogue made these accounts knew at the time they furnished the goods and merchandise of a partnership existing between the said M. E. Pogue and Charles Nickell, prior to said dissolution of February 28, 1884." The first of these instructions should have been given, for the reasons already given in considering the ruling of the court in excluding exhibit D from the jury. I think the second instruction correctly stated the law applicable to the case of a dormant partner, when sued on account of the transactions of the remaining partners after

he had retired from the firm. There was no proof that Nickell gave any notice that he had retired, or ceased to be 'a member' of the alleged firm; nor was such notice necessary, if he was a dormant partner. *Newmarch* v. *Clay*, 14 East, 239; *Heath* v. *Sansom*, 4 Barn. & Adol. 172; *Carter* v. *Whalley*, 1 Barn. & Adol. 11; *Grosvenor* v *Lloyd*, 1 Metc. 19; *Phillips* v. *Nash*, 47 Ga. 218; *Nussbaumer* v. *Becker*, 87 Ill. 281; *Cregler* v *Durham*, 9 Ind. 375; *Scott* v. *Colmesnil*, 7 J. J. Marsh. 416; *Le Roy* v. *Johnson*, 2 Pet. 186; *Magill* v. *Merrie*, 5 B. Mon. 168; *Kennedy* v *Bohannon*, 11 B. Mon. 118; *Bernard* v. *Torrance*, 5 Gill. & J. 383; *Boyd* v. *Ricketts*, 60 Miss. 62; *Kelley* v. *Hurlburt*, 5 Cow. 534; *Holdane* v. *Butterworth*, 5 Bosw. 1; *Davis* v. *Allen*, 3 N. Y. 168; *Vaccaro* v. *Toof*, 9 Heisk. 194; *Pratt* v. *Page*, 32 Vt. 13; *Benjamin* v. *Covert*, 47 Wis. 375; *Warren* v. *Ball*, 37 Ill. 76; *Cook* v. *Penhryn Slate Co.*, 36 Ohio St. 135.

4.   The court refused the following instruction, asked by the defendant Charles Nickell: "That the duty of a retiring dormant partner to give notice of the dissolution of the partnership is a duty which he owes to those who before that time had some knowledge of the connection with the firm.   To strangers having no such knowledge, he owes no such duty.   As to them, he can only be charged as a partner (when in fact he is not) by showing that he in some way misled them, as that he held himself out to the world as such, or that he held himself out to them.   If you find that a silent or dormant partnership existed between Nickell and the said Pogue, but that Nickell retired from said firm prior to the purchase of the said goods for which these actions were brought, the plaintiff cannot recover in said actions, unless you further find that Nickell in some way misled the parties by whom said goods were furnished, by holding himself out to the world as a partner, or to them, or knowingly allowing some one else to do so."   This instruction should have been given.   It is plain elementary law; and it is difficult to suggest any plausible reason for its refusal.   The authorities already cited abundantly show that a dormant partner, retiring from

the firm, need give no notice of the fact of his retiring, except to those who had knowledge that he had been a member of it.   Those persons who had no previous notice that such retiring partner had been a member of the firm could have no interest in knowing of the dissolution, for the reason such retiring dormant partner could not be rendered liable to them for new debts contracted by the remaining members of the firm.   This instruction should have been given, and its refusal was error.

There were some other points made upon the argument by the appellant, but their consideration is not deemed important at this time.   What has been said is decisive on the present appeal, and requires that the judgment be reversed, and a new trial had in the court below.