Clark, J.
This is a petition in error filed in this court, asking the reversal of the decision of the court of common pleas of this county.
The plaintiff in error, in his petition filed in the court below, alleges:
“ That he has a bona fide residence in tbe county of Pike, state of Ohio, and that he was on the 13th day of July, A. D. ■1889, married to the defendant, Jane Hickle, and that no children were born of said marriage.
“ That the defendant, together with her son (by a former marriage), George Wiley, conspired together to drive plaintiff from his home. That they theatened to take his life and do him some great bodily harm, if he did not leave the premises of defendant.
*492 “ That defendant threw his clothing and wearing apparel out of the house and ordered him off the premises.
“ That she threatened him so cruelly, and her said son, George Wiley, at her instigation, was so brutal toward him, that on the 13th day of April, A. D. 1890, from fear that they would do him some great bodily harm or take his life, he was compelled to and did leave the premises of the defendant, where they resided.
“ That defendant well knew at and prior to the time of their said marriage, that plaintiff was possessed of no property. That prior to said marriage they talked about this matter, and defendant said she knew he had no property, but that ■ made no difference, for she had plenty for both of them.
“ That while they lived together plaintiff treated her kindly, and did all in his power to make their union a happy one. That he employed himself as best he could in looking after her financial interests, and did all he could to take care of and manage her property in a good husband-like manner.
“ Plaintiff further alleges that he is seventy-eight (78) years of age, that he is not able physically to earn means with which to support himself with the necessaries of life; that he has no income whatever, and is now residing temporarily with his son-in-law, Joseph Fuller, and on whose charity he is now living.
“ That the defendent owns and is possessed of a great amount of real property situated in the county of Pike and state of Ohio, and bounded and described as follows, to-wit: (Here follows a description by metes and bounds, of two tracts of land on the waters of the Scioto river, one containing 242J and the other 131 acres of land, and then further alleging) :
u That the rents and profits that the defendant derives from said property is about two thousand dollars ($2,000.00) per year. That she is possessed of and has ample and abundant means with which to support both him and her. That he is *493 unable to support himself and defendant. That defendant is able to do so, but refuses so to do, or to assist him therein.
“ Wherefore, plaintiff asks that the court may decree him, out of the proceeds arising from the rents of the lands of defendant, a reasonable amount of money for his maintenance and support; and for all and any relief that the facts and circumstances of the case may warrant.”
To this petition the defendant demurred, on the ground that the same did not state facts sufficient to entitle the plaintiff to the relief prayed for. The demurrer was sustained by the court below, to which ruling the plaintiff at the time excepted, and not asking to further plead or amend his said petition, the same was dismissed at his costs, and judgment therefor rendered.
The errors assigned in this court are, 1st, that the court of common pleas erred in sustaining the demurrer to the petition; 2nd, that the judgment should have been for the plaintiff instead of for the defendant.
The demurrer having been sustained, and the plaintiff not asking to further plead or amend his petition, the only thing left for the court to do was to dismiss the petition. The single question, therefore, for our determination, is: Hid the court err in sustaining the demurrer to the petition ? The marriage of the parties having taken place since the passage of the act of the General Assembly, March 19th, 1887, (84 v. 132), entitled, “ An act to define the rights and liabilities of husband and wife,” the question involves the construction of that act, or such ®f the sections thereof as may be pertinent and have a bearing upon the question.
If it was the intention of the legislature to create a cause of action, or provide a remedy for a husband in a case like the present one, then we are satisfied that the allegations of the petition of the plaintiff make a strong case for relief. The power of the legislature to provide a remedy for such a ease, if so intended, was, of course, ample and plenary.
*494 It is not to be denied but that the act has provoked considerable unfavorable criticism; on the other hand, however, there has been commendation.
No decision by the Supreme Court, construing the act or any of its provisions, has as yet been handed down; and although coun'sel for the respective parties have used commendable industry, and have cited, in able arguments, many authorities upon the rights and liabilities of husband and wife, at common law and as modified by statutory enactments — yet they afford us but little, if any, aid in arriving at a conclusion. No case directly in point has been cited, nor have we been able to find any. We must, therefore, guided by the established rules of statutory construction, ascertain, if we can, from the wording of the statute the intent of the legislature in its enactment.
Sec. 3108 provides : “ Husband and wife contract towards each other obligations of mutual respect, fidelity and support.”
Sec.'3109. “The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto.”
Sec. 3110. “The husband must support himself, his wife, and his minor children, out of his property or by his labor. If he is unable to do so, his wife must assist him to do so as far as she is able.”
Sec. 3111. “Neither husband nor wife has any interest in the property of the other, except as mentioned in sections 3110 and 4188, but neither can be excluded from the other’s dwelling.
Sec. 5 (p. 136). “In the interpretation of this act, unless the contest shows that another sense was intended, the word “property” includes lands, tenements and hereditaments, mtney, goods and chattels, rights and things in action, and evidences of debt; but this enumeration shall not be construed to require a strict construction of other words therein.”
The other words in the statute, not embraced in the enumeration in the section last quoted, are not to be strictly con *495 strued, but liberally, as we suppose, and we are to extract the spirit of the act from its words. Brown v. Hunt, 18 Ohio St. 311 ; Id. 160.
Confining ourselves for the present to the sections of the act quoted above, let us considder their obvious import and effect.
Under sec. 3108, “husband and wife contract towards each other obligations of mutual respect, fidelity and support.” The language is plain and unambiguous. The wife as clearly contracts for the support of. the husband, if his support becomes necessary, as he does for hers.
“The husband,” as provided in section 3110, “must support himself, his wife, and minor children, out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able.” Assist him to do what ? To support herself and minor children? We think not. The language refers as clearly to the compound personal pronoun “himself” (the husband), as to his wife and minor children; and is in accord with the obligation imposed upon her by section 3108. Of course, the wife is not bound to assist further than she is able, but it is shown here that the defendant is abundantly able to support the plaintiff, and that he is unable to maintain himself.
Under section 3111, “Neither husband nor wife has any interest in the property of the other, except as mentioned in sections 3110 and 4188, but neither can be excluded from the other’s dwelling.” The exception in this section clearly implies or recognizes an interest of husband and wife in the property of each other, “as mentioned in sections 3110 and 4188.” They have no other interest, and the property of each one is his or her separate property. Section 4188, p. 135, makes provision as to dower of “ a widow or widower” in the real property of a deceased consort, and the right to remain in the mansion house of the deceased, as provided. These interests, of course, are to take effect and be enjoyed after the decease of the consort.
*496 The intetest, as mentioned in section 3110, is for support during coverture; and it extends to all the property of the one liable for support, if within the enumeration in section 5, supra. Here, it is the wife who has violated her duty, and the husband has a right to look to her for assistance, and it is her duty to render it as far as needed, if able, as expressly provided by section 3110, and made an interest in her property by section 3111.
It seems to be evident from the sections quoted above, taken in connection with the subsequent sections of the act,' that it was the intention of the legislature to place husband and wife, as to their rights and liabilities, upon a perfect equality. Section 3112 provides that they “ may enter into any engagement and transaction with each other, or with any other person, which either might, if unmarried; subject,” etc.
Under section 3113, they “cannot, by any contract with each other, alter their legal relations, except that they may agree to immediate separation and may make provision for the support of either of them * * *. By section 3114, either one “may take, hold, and dispose of propperty, real or personal, the same as if unmarried.” Under section 3115, “ Neither husband nor wife, as such, is answerable for the acts of the other.”
Sec. 3116. “ If the husband neglects to make adequate provision for the suppport of his wife, any other person may, in good faith, supply her with the necessaries for her support, and recover the reasanable value thereof from the husband.”
Sec. 3117. “ If the wife abandons the husband, he is not liable for her support until she offers to return, unless she was justified by his misconduct, in abandoning him.”
These last two sections embody, substantially, the common law rules in such cases, and seem at first blush at least, to be wanting in mutuality of obligations. The primary duty of support is cast by section 3110, on the husband, and it is only when he is unable to afford it that the wife is to assist, and this duty to assist on the part of the wife, and the provision *497 in section 3111, that “ neither can be excluded from the other’s dwelling,” may have been by the draughtsman of the act, as well as the legislature, considered as equivalents; and, especially so, as the liability to third persons for necessaries for support of the wife, could only be made effectual where the husband was possessed of property, and it would be his duty to afford the support. But, however this may be, and we are not free from doubt about it, the idea of equality is further carried out by the provisions as to dower to each, in section 4188, before mentioned, and by section 4, p. 136, abolishing the estate by curtesy.
This has been the tendency of our legislation for many years, commencing with the act of February 28, 1846; followed by the act of April 3, 1861 $ and subsequent acts, original and amendatory, all tending in the some direction and familiar to the profession. These acts, and the many decisions of our courts under them, had, prior to the enactment.of the act under consideration, to a great extent worked a revolution in the law of this state, as to the rights and liabilities of married women, and it only needed this last act to make it complete.
Counsel for defendant severely criticise the statute, and among other things say: “ That it is ill-considered, ill-advised and an extremely detrimental innovation, and as one commentator has expressed it, ‘ There is no lawyer living or dead who knows what it means. It has never been adjudicated, but it ought to be, for it stands a Chinese puzzle upon the face of the Revised Statutes.’ ”
We readily concede that the dead lawyers do not know what it means, and that there may be some living ones who do not; and further, that it is something of a puzzle, but not an insurmountable one.
They further say: “We claim this demurrer should be sustained ; First, Because the particular sections of this statute, under which this action is brought, are merely a codification of the common law, and therefore, give the husband no *498 enlarged or additional rights. Second, Because the common law as to married woman’s rights, being an ancient and settled system, ought not to be overturned, except by “clear, unambiguous and peremptory language.” Third, Because this statute omits the very section of the ‘ California Civil Code,’ which would give this plaintiff a remedy ; and Fourth, Because the statute itself provides no remedy, nor does any other section of the code, whereby the husband is empowered to sue the wife.”
Counsel have elaborately argued these claims or propositions, but have failed to convince us that either one is well founded.
The first one seems to us quite untenable. At common law, by the marriage the husband became the owner of the wife’s personal property, and if they united in selling her realty, and received the money, that was his also ; and if it was invested in real estate, and the title taken to himself, the estate was his. Ramsdell v. Craighill et al., 9 Ohio Rep. 197.
The choses in action of the wife, if reduced to possession during coverture, also became his. Dixon’s Adm’r v. Dixon et al., 18 Ohio Rep. 113, 115 and 116.
“ If the wife at the time of marriage,” says Chancellor Kent (2 Com. 130), “ be seized of an estate of inheritance in land, the husband, uj)on marriage, becomes seized of the freehold jure uxoris, and he takes the rents and profits during their joint lives.”
In Canby’s Lessee v. Porter, 12 Ohio, 80, it is said: “ The interest of the husband is a legal estate ; it is a freehold during the joint lives of himself and wife, with a freehold in remaindér to himself for life, as tenant by the curtesy, and a remainder to the wife, and her heirs in fee. * * * It is, in every sense, ‘ his land ’ * * * and liable to respond for his debts.”
In Thompson’s Heirs v. Green, 4 Ohio St. 216, Judge Ranney, on page 223, says : “ By the common law, the freehold of the husband thus acquired, was as perfect, absolute *499 and unfettered, as though derived by deed; and could be aliened by him, without the consent of the wife, or taken upon legal process for his debts. It arose by operation of law as an incident of the marriage, and carved out of the estate of the wife a freehold in favor of the husband, leaving her, or her heirs, only the reversion to be enjoyed after the termination of the life-estate.”
The husband was bound for the ante-nuptial debts of the wife; for her support and for her torts, during coverture. She could not contract or be contracted with, sue or be sued, without joining her husband. Indeed, as is said in the books, her legal existence during coverture was merged in that of her husband.
Judge Ranney, in his opinion in the case last cited, pp. 226 and 227, further says: “ As the marriage gave her ” (the wife) “ valuable rights in the property of the husband, and bound him to the payment of all her debts, and for her support during coverture, the old-fashioned sense of justice gave him this right to the use and enjoyment of her lands, in the way of compensation. In later times, some devoted champions of the rights of women, have arrived at the conclusion, that it is but a relic of barbarism, founded on man’s tyranny and oppression, which demands instant abrogation. It may be so; I do not undertake to decide that it is not. If it is, the power of correction is with the legislature and not the courts. * * * Indeed, when the desired reform takes place, and the marriage contract shall leave the wife in the full enjoyment of all her rights of property, and the right to pursue every legal remedy, as fully and effectually as though she were sole and unmarried, it m,ay be worth while to consider, whether she should not assume some of the responsibilities of a feme sole.”
The “ reform ” has taken place, and the wife is clothed with all the rights and remedies, and is subject to all responsibilities of a feme sole.
The husband, in place of all the valuable rights he had in *500 the wife’s property, real and personal, at common law, lias only left during the coverture the right, if he is unable to support himself, to compel the wife to assist him so far as she is able, the interest in her property to that extent and the right to remain in her dwelling. We are unable to perceive any intention on the part of the legislature, in the sections of the act alluded to, merely to codify the common law. Besides, we think it would be a strange and far-fetched conclusion to come to, that the law-making power after all the legislation before alluded to, removing the disabilities of married women, and defining the rights and liabilities of husband and wife, should have intended in the sections alluded to, or by the act itself, to get back to the common law. Such a conclusion would certainly be a very violent one.
As to the second claim or contention, little need be said. The act itself, as stated before, furnishes the rule for its interpretation. It is not to be strictly construed. The common law rule of construction contended for is, therefore, inapplicable.
Third — Defendant’s counsel having stated in their brief, that sections 3108, 3109 and 3111 of the act were taken literally from sections 155, 156 and 157, of the “California Civil Code,” make this third claim : “ Because this statute omits the very section of the ‘ California Civil Code ’ which would give this plaintiff a remedy,” and, then argue inferentially, that the legislature did not intend by section 3110 to provide a remedy for the husband on failure of the wife to assist in his maintenance where he was unable to support himself. The statement of connsel is not fully borne out by the fact. Sections 3108 and 3109 are the same as sections 155 and 156 of the California Civil Code, but sec. 3111 contains these material words: “ Exceptas mentioned in sections 3110 and 4188,” notin section 157 of the California Code. Besides, there are a number of the other sections of our statute partly *501 taken from said code, but other words or language used in them. The section said to be omitted is as follows:
“176. The wife must support her husband when he has not deserted her, out of her separate property, where he has no separate property, and there is no community property, and he is unable, from infirmity, to support himself.” ■
This section would have read strangely if inserted in our statute in place of section 3110. The profession would certainly have thought that the legislature had gone daft. In California they have separate and community property, but have abolished dower. We have dower, but not community property, and the exception in 3111 recognizes the dower inerest as well as the interest of husband and wife in the property of each other for support. The terms “ separate property,” used in the section to distinguish it from community property, would be out of place in our statute. They have lost much of their significance since the repeal of the acts on the subject.
The fourth claim or contention is not free from difficulty. It is true that the statute itself does not provide a remedy, nor does any section of the code specifically do so, whereby the husband is empowered to sue the wife. But, the statute confers a right, and it is the boast of the law, that wherever there is a right there is a remedy. It is said by Scott, J., in Chinn v. Trustees, etc., 32 Ohio St. 236: “ The civil action of the code is a substitute for all such judicial proceedings as, prior thereto, were known, either as actions at law or suits in equity.”
This is quoted with approbation in Corey v. Lamb, 43 Ohio St. 390, a proceeding for the assignment of dower, where it was claimed that it was “ a special statutory proceeding, as distinguished from a civil action,” and therefore not appealable.
On pages 393 and 394, Owen, J., says : “The provisions relating to dower, under which the original proceeding was commenced (section 5707, et seq., Revised Statutes), do not ‘designate the kind of action, or prescribe the mode of pro *502 ceeding thereinand, independently of the general effect which the last revision of our statutes may have had upon proceedings which had theretofore been regarded as special statutory proceedings, it seems clear that a proceeding for the assignment of dower is one in the - nature of a civil action.” Then, after "quoting section 4956, Revised Statutes, he further says : “The logical inference from this provision is that, as the provisions relating to dower are silent upon the mode of proceeding, pleadings, etc., the general remedial provisions of the Revised Statutes relating to proceedings in courts having jurisdiction of dower proceedings are to control the form of service, pleadings, etc., in such proceedings.” If the civil action of the eode in a dower proceeding, the right of action being statutory, is proper, it is difficult to perceive why it is not appropriate in this case. One of the great objects of the code was uniformity. A single action for the enforcement of all, or nearly all, rights. The legislature doubtless considered that the civil action of the code was sufficient, and that it was unnecessary to designate in the act itself any special mode of proceeding. But, the husband, it is claimed, is not empowered to sue the Wife — cannot sue her. Why not? He can contract.with her, and she with him, the same as with any other person, and .it follows logically that if there is a violation of the contract, the injured party can sue the other. The most serious question, however, is as to the nature of the relief the injured party may be entitled to. Is it what was heretofore denominated an action at law, sounding in damages and for the jury, or in the nature of a suit in equity and for the court ? Marriage is defined to be : “A contract, made in due form of law, by which a man and woman reciprocally engage to live with each other during their joint lives, and to discharge towards each other the duties imposed by law on the relation of husband and wife.” 2 Bouvier’s Law Die. 105.
The law, of course, formed a part of the marriage contract, as much as if it had been expressly referred to and embodied *503 therein. When the defendant, combined with her son, excluded the plaintiff from her dwelling, and refused to aid in his support, she violated the marriage covenant and her duty as a wife. Can this be suitably redressed by an action for damages ? Will such an action afford full, adequate and complete relief? It is claimed by the junior counsel of plaintiff, based on a communication in the Bulletin, that “an action for damages for a breach of a statutory duty owed ” by the wife to the husband is the proper action. That “notwithstanding the duty is a continuing one he may have an action for its breach and repudiation, and recover his full damages to be estimated according to age, of both parties, and other conditions and surroundings, and not be compelled to wait till the marriage relation is ended,” citing Westerman v. Westerman, 25 Ohio St. 500 ; James v. Allen County, 44 Ohio St. 226 ; and Stephenson v. Repp, 47 Ohio St. 551.
We have examined these cases, and do not think they sustain the contention. In the first case, Mrs. Westérman after her engagement, and shortly before her marriage to Westerman, made secretly a voluntary conveyance to her two sons by a former marriage, of two tracts of land which she had purchased of her brother, and on which she still owed part of the consideration money. The brother brought suit for the balance due against, her and her husband, and recovered, and - the husband was compelled to pay the amount. He, thereupon, brought suit against his wife and her two sons, claiming that he was subrogated to the rights of the wife and the brother, the vendor, and that the deed was fraudulent, and asking to have it set aside and the land subjected to his claim. The judgment was for the husband, and the court, in the syllabus, say: “Under the act of May 1, 1861 (S. & S. 389), as amended March 23, 1866 (S. & S. 391), the separate property of the wife is primarially liable as between her and her husband, for the satisfaction of judgments recovered in actions brought against them on causes of action existing against her *504 at their marriage; and the husband when compelled to pay any such judgment, becomes in equity, a creditor of the wife to the amount paid, and entitled to charge the same on her separate property, and for that purpose to set aside fraudulent conveyances thereof made in contemplation of marriage.”
The case is purely of equitable cognizance, and what bearing it may have upon the case under consideration, we are unable to see; unless it is, that the husband could sue and recover against his wife in a proper case, even before the statute under consideration.
The syllabus of the second case is : “ Where an employe, engaged under a contract for a specified time, the wages being payablg in installments, is wrongfully discharged before the expiration of the period of hire, and all wages actually earned at the time of the discharge have been paid, an action will not lie to recover the future installments, as though actually earned, but the remedy is by action for damages arising from the breach of contract, and one recovery upon such claim is a bar to a future action.”
The case is one at law, between master and servant, and not between husband and wife. The plaintiff in the case at bar was not hired by the defendant for a specified time; there were no payments to be made by installments; no wages to be paid, or actually paid ; no recovery to be a bar to a future action; no splitting of causes of action upon an entire contract; nor claim to recover for constructive services. He brings a single action — stating the facts of his case — to enforce a continuing duty arising from the marriage relation. The facts are entirely different, the nature of the cases dissimilar, and the principle of the decision not applicable to the case under consideration.
The syllabus of the last case is : “ When goods are purchased upon an agreement to give a promissory note for the price, payable in one year with interest, on a refusal of the purchaser to make and deliver the note after the goods have been delivered, the vendor may, without waiting for the ex *505 piration of the credit, maintain an action at once for the breach of the agreement, and the measure of damages will be the price of the goods sold and delivered.”
The agreement for credit was on the condition that the purchaser gave his note. He refused to comply with the condition. That element, therefore, was eliminated from the contract, and the vendor had the right to recover at once, and the measure of damages was the agreed price of the goods. It was claimed in support of the demurrer that the common law precedents and writers in such case recognized two actions in the vendor : first, a special action on the case for the non-delivery of the note; and the other, an action for the value of the goods at the expiration of the time for the maturity of the note. Minshall, C. J., after stating the common law rule, says : “ Rut this is not material under our system, where no particular form of action is recognized, and the plaintiff is entitled to recover, if it appears from the facts stated in his petition that he is entitled to any relief.” And further in the-opinion, says That “ the law to discourage multiplicity of •of suits, recognizes but one action for the breach of an entire contract,” citing James v. Allen County, supra. The case belongs to the law of sales, and is not in point here.
If the defendant had committed a breach of the marriage contract, by refusing- to marry plaintiff, of course the remedy would have been what was heretofore denominated an action at law, in which the plaintiff could have shown the value of her property, as an element of damages. But she consummated the agreement, and the plaintiff was not put in a worse, but better condition. By the marriage contract itself, the defendant evinced an intention to charge her property for the support of the plaintiff. He had no property, which she knew, and when prior to the marriage they talked about the matter, she said “ she knew he had no property, but that made no difference, for she had enough for both of them.”
Counsel have cited in this connection, 30 Ohio St. 147; 32 Id. 380; 35 Id. 270; 290; 43 Id. 171 ; 46 Id. 192; 47 *506 Id. 423; 429 ; 26 Id. 527; and 3 C. Ct. 592. We have examined the cases, as well as others, and especially the earlier case of Phillips et al. v. Graves and wife, 20 Ohio St. 371. These cases, of course, are familiar to the profession and established the proposition, prior to the enactment of the act under consideration, that a married woman possessed of a separate estate in real or personal property, could charge the same with her debts for the benefit of her separate estate or for her own benefit, upon the credit of her property, or for a debt as surety for her husband or another. Her intention to so chai’ge her property in equity, could be either expressed or implied. It might be inferred from circumstances, or from the fact that she executed a note or other obligation for the indebtedness. The contract to charge her property was not required to be in writing, but might be shown by parol. Courts .of equity would enforce the payment of such charges against her separate estate through a receiver. “ (1st), by appropriating the personal property; (2nd), by sequestering the rents and profits of the realty ; and (3rd), by sale of the realty when the same is necessary.”
It was held in Phillips et al. v. Graves and wife, cited supra, “That the jurisdiction of courts of equity in this behalf is” (was) “ not abridged or taken away by the operation of the statutes, concerning the rights and liabilities of married women.” This was in 1870.
In Jens v. Gugel & Gugel, 26 Ohio St. 527, it was held that “Section 28 of the Civil Code, as amended March 30, 1874, (71 Ohio L. 47), was not intended to enlarge or vary the liabilities of a married woman, but merely to change the form of remedy.”
In the case in 47 Ohio St. 423, Spear, J., on pp. 429-30, says ; “ To maintain an action against a married woman under the statutes in force in .1883, (act of March 30, 1874, as amended January 21, 1879, and see. 3108 Revised Statutes), it must be made to appear that she has separate estate; that the transaction, out "of which the obligation grew, had refer *507 ence to, or was for the benefit of, her separate estate, and that she intended to charge the separate estate with its payment.
“ Where these facts conjoin, no reason exists why the engagement should not be enforced against a married woman which would not be equally good against its enforcement if she were single. The fact of covertnre does not necessarily invalidate the engagement.”
The case was, as said by the learned Judge, “ of a class known as equitable actions,” and it was held that a'personal judgment could be rendered against the feme eovert.. In am swer to an objection that there had not been a jury trial below, his honor said: “ But such cases have not been regarded as triable by jury.”
Such was the state of the law at the time of the passage of the act under consideration. The form of the remedy against a married woman was changed, and she could be sued alone, in a proper case, and a personal judgment rendered against her. The judgment would., of course, partake of, or follow the nature of the cause of action against her. Whenever her property was to be charged, the proceeding was of an equitable nature.
While the ante-nuptial intention of the defendant, to charge her property for the support of the plaintiff, is entitled to con-, sideration, we do not, however, base our decision upon that; but mainly upon the provisions of the statute, and being of a higher nature. By its provisions, her property is charged, and plaintiff has a fixed interest in it for assistance from her for his support, as far as she is able, and she is abundantly able. The machinery of a court of law is not adapted to the working out or enforcing the interest or charge. It is, as it seems to us, in the nature of a lien. In cases of like nature, and especially as between husband and wife, courts of equity-have always assumed and exercised jurisdiction.
Judge McIlvaine, in his able and exhaustive opinion, in the case of Phillips et al. v. Graves and wife, 20 Ohio St. 371, after a review of the rights of the husband and status of the *508 wife at common law, on page 380 says: “ Such is a brief but general outline of a married woman's legal status, as declared and enforced in common law courts. Courts of equity, however, do not fully adopt the theory, nor follow the practice of courts of law, in relation to the rights and responsibilities of husbands and wives, as between themselves,-or in their relation to others.
“ A fundamental distinction exists at the very threshold of their jurisprudence. Equity recognizes the separate existence of the wife, and regards her as a rational and- responsible subject of its jurisdiction ; entitled to its protection and amenable to the decrees of a court of conscience.''
The legislature in enacting a statute so in accord with the equitable rules so well stated by the learned judge, surely did not intend to oust courts of equity of a jurisdiction, exercised since the earliest times.
And on pages 388-9 (in answer to a claim that the acts of 1861 and 1866, prescribed the only remedies in force, for subjecting the separate estates of married women to the satisfaction of their liabilities) he says :
“ These statutes do not, nor were they intended to abridge the powers, or restrain or limit the jurisdiction of courts of equity, in relation to the separate estates of married women ; but, on the other hand, they do enlarge the jurisdiction of the chancellor, in so far as the general property of married women is changed, by the force of these statutes, to separate'property.
The legislative intention was to change the legal status of married women, and declare their legal “rights and liabilities.” The common law, in so far as its rules are incompatible with the provisions of these enactments, is abrogated or modified. The remedies therein provided may be enforced by courts of common law jurisdiction. And to the extent that courts of law are by these statutes invested with remedial jurisdiction, heretofore exercised by courts of equity exclusively, the remedies are cumulative, and the jurisdiction concurrent.
The principle controlling this question is stated by Story *509 (1 Story’s Eq. Jur., sec. 80), as follows.: “In modern times courts of law frequently interfere, and grant remedies, under circumstances in which it would certainly have been denied in earlier times. And sometimes the legislature, by express enactments, has conferred on courts of law the same remedial faculty which belongs to courts of equity.’ Now, in neither case, if courts of equity originally obtained and exercised jurisdiction, is that jurisdiction overturned or impaired by this change of authority at law, in regard to legislative enactments. For, unless there are prohibitory or restrictive words, the uniform interpretation is that they confer concurrent and not exclusive remedial authority.”
There are no “ prohibitory or restrictive words ” in the statute under consideration, nor indeed, any words at all as to remedies. It simply declares or defines, “ rights and liabilities.”
Suppose, that the plaintiff wishes or asks to be restored to the dwelling, from which he has been excluded. How could that be accomplished by the verdict of a jury ? It could only be done by the order of the chancellor, as it would be in the nature of specific performance, and enforced, if necessary, by proceedings for contempt. He could not have brought a real action against defendant, and ejected her. The dwelling is hers, and she has the right to occupy it, but not to the exclusion of plaintiff. It is evident, that there is not a full, adequate, and complete remedy at law.
Upon the consummation of the marriage new relations were formed between the parties; relations higher and above mere contractual relations. Sec. 3113 provides that, “ a husband and wife cannot, by any contract with each other, alter their legal relations.”
In Maynard v. Hill, 125 U. S. Rep. 190, Mr. Justice Field in the opinion, on pages 210-11, says: “ It is also to be observed that, whilst marriage is often termed by text writers, and in decisions of courts, a civil contract — generally to indicate that it must be founded upon the agreement of the *510 parties, ancl does not require any religious ceremony for its solemnization — it is something more than a contract. The consent of the parties is of course essential to its existence, but when the contract to marry is executed by the marriage, a relation between the parties is created which they cannot change. Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintainance of which in its purity the public is deeply interested, for it is the foundation of the family and society, without which there would be neither civilization nor progress.”
The learned judge then quotes at length from the 51 Maine, 481,483, from which we extract as follows : “ When the contracting parties have entered into the married state, they have not so much entered into a contract as into a new relation, the rights, duties, and obligations of which rest not upon their agreement, but upon the general law of the state, statutory or common, which defines and prescribes those rights, duties and obligations. They are of law and not of contract. * * * The reciprocal rights arising from this relation, so long as it continues, are such as the law determines from time to time, and none other.”
And then, on pp. 212 and 213, the judge quotes to the same effect from McGuire v. McGuire, 7 Dana, 181, 183; and Ditson v. Ditson, 4 R. I. 87, 101, from the latter of which we extract the following : “ In strictness, though formed by contract, it signifies the relation of husband and wife, deriving both its rights and duties from a source higher than any contract of which the parties are capable, and as to these uncontrollable by any contract which they can make.”
And from Wade v. Kalbfleisch, 58 N. Y. 282, 284, and Noel v. Ewing, 9 Indiana, 37, from the latter of which we take what follows: “ Some confusion has arisen from confounding the contract to marry with the marriage relation itself. And still *511 mpre is engendered by regarding husband and wife as strictly parties to a subsisting contract. At common law, marriage, as a status, had few elements of contract about it. For instance, no other contract merged the legal existence of the parties into one. Other distinctive elements will readily suggest themselves, which rob it of most of its characteristics as a contract and leave it simply as a status or institition. As such it is not so much the result of private agreement as public ordination. In every enlightened government it is preeminently the basis of civil institutions, and thus an. object of the deepest concern. In this light, marriage is more than a contract. It is not a mere matter of "pecuniary consideration. It is a great public institution, giving character to our whole civil polity.” (pp. 49-50.)
By. the civil code, “ issues of fact arising in actions for the recovery of money only, or specified real or personal property, shall be tried by a jury.” “All other issues of faet shall be tried by the court, subject to its power to order any issue tobe tried by a jury, or referred. Sections 5130 and 5131, Revised Statutes.
This is not an action for the recovery of money only. It is an action for a judgment or decree finding that plaintiff is entitled to assistance from defendant in his support, as far as she is able; and declaring plaintiff’s interest in her property to'that extent, and subjecting it to the payment of the judgment or decree; and for any other order or relief that may be justified by the facts of his case.
The exercise of these powers belong to the court, and are inconsistent with the functions of a jury. It is for the court, as chancellor, to enforce the rights, duties and obligations arising from and out of a relation that is more than a contract; is a status or institution, and not a mere matter of pecuniary consideration.
A jury trial is uncertain. The verdict might be too small or top large. If too small, then, when the amount found by the verdict should become exhausted, the plaintiff would, if *512 living, become a charge upon his friends or the public. If too large, and collected or paid to plaintiff, he might die, or there might be a divorce before the amount was consumed. This would work an injustice to the defendant. Nothing of this kind could happen where the court found the amount .necessary for support, and made it payable at stated times, and where the judgment or decree could be kept open for future modification. Matters of support have not heretofore been regarded as triable by jury, but for the court. If plaintiff was entitled to any relief, it was error to sustain the demurrer. The judgment is reversed, with costs, and the cause remanded to be further proceeded in, according to law.
John W. Qoldsberry and Charles M. Caldwell, for plaintiff in error.
James H. Moore and John A. Eylar, for defendant ip error.